IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

---

## JACKSON, APRIL TERM, 1896.

---

INSURANCE CO. *v.* THORNTON.

*(Jackson.* June 11, 1896.)

1. VERDICT. *Set aside, when.*

Doctrine reaffirmed and illustrated that a verdict will not be set aside by this Court upon the facts alone, if there is any material evidence to support it. (*Post, pp. 3–7.*)

Case cited and approved: Railway Co. *v.* Mahoney, 89 Tenn., 311.

2. INSURANCE, LIFE. *Waiver of preliminary proofs of death.*

The insurer's refusal to pay on any other grounds, or his denial of liability without giving reasons, waives the furnishing of proofs of death or defects in them if they have been furnished. (*Post, pp. 7, 8.*)

13 P—1

---
Insurance Co. *v.* Thornton.
---

3. PLEADING.  *General issue.*

"Not guilty" is a nullity, and tenders no issue, when pleaded as the general issue in an action upon a contract.  (*Post, pp. 9–13.*)

Code construed: §§ 4634–4638 (S.); §§ 3623, 3624, 3625, 3627 (M. & V.); 2913–2915 (T. & S.).

4. SAME.  *Of conditions to contract.*

The defense that insurance tickets or policies have been issued without authority, and in violation of a condition indorsed thereon that not exceeding two tickets of $3,000 each should be issued to the same person, is not available, in a suit thereon, where neither the general issue nor a special plea setting it up is interposed.  (*Post, pp. 9–13.*)

Cases cited: Warren *v.* Kennedy, 1 Heis., 437; Bank *v.* Hicks, 4 Hum., 326; Insurance Co. *v.* Munday, 5 Cold., 548; Plowman *v.* Foster, 6 Cold., 52; 94 Ala., 434.

5. DEMURRER.  *Profert and oyer.*

Although plaintiff has, in his declaration, made profert of the contract sued on, it cannot be looked to upon demurrer, unless oyer thereof has likewise been demanded and granted.  (*Post, pp. 13–17.*)

Cases cited: Harlan *v.* Dew, 3 Head, 503; Martin *v.* Bank, 2 Cold., 332; 3 McL., 241; 14 Gratt., 24; 1 Bibb, 328, 571; 7 J. J. Mar., 219.

---
FROM SHELBY.
---

Appeal from Circuit Court of Shelby County. L. H. ESTES, J.

JOHN R. FLIPPIN for Insurance Co.

GANTT & PATTERSON and G. M. BROWN for Thornton.

BEARD, J.   This case was disposed of on a former day of this term in an oral opinion.   Since then the plaintiff in error has submitted an earnest petition for a rehearing, in which it is insisted that this Court, by wrong processes, had reached a judgment which is highly prejudicial to petitioner.   In order to guard against all misunderstanding of the exact points determined by this Court, it is thought best to file this written opinion, which will embrace not only the questions disposed of orally, but those that have been presented and considered on the rehearing.

The facts of this case, as disclosed by the record, are briefly these: The plaintiff in error is an accident insurance company, incorporated under the laws of Michigan, with a general agent for the State of Tennessee and local agents in the city of Memphis. On the twelfth of December, 1894, one W. E. Davis, the intestate of the defendant in error, purchased from one of these local agents four tickets, of the value of $3,000 each, in which the said company, for the consideration of one dollar, paid at the delivery thereof, agreed to insure the purchaser against "immediate, continuous, and total disability, or death, by external and accidental injuries" received during the period of twenty-four hours from the hour of 12 M. of the day of the purchase.   Each of these tickets contained exceptions, which it is unnecessary to set out, and had printed on its reverse side certain conditions, which are as follows:

"AGREEMENTS AND CONDITIONS UNDER WHICH THIS TICKET IS ISSUED AND ACCEPTED.

"1. This insurance does not cover disappearance; nor suicide, sane or insane; nor injuries of which there is no visible mark on the body; nor accident; nor loss of limb or of sight; nor disability resulting wholly or partly, directly or indirectly, from any of the following causes, conditions, or acts, or when the insured is under the influence of, or effected by, any such cause, condition, or act, viz.: Disease, bodily or mental infirmity, hernia, orchitis, fits, vertigo, sleep-walking; medical or surgical treatment or operation (amputation necessitated solely by injuries, and made within ninety days after the accident, excepted); intoxication or narcotism; voluntary or involuntary taking of poison; contact with poisonous substances, or inhalation of gas or vapor; war or riot; sunstroke or freezing; internal injuries (inflicted by the insured or any other person); voluntary overexertion, wrestling, lifting, racing; voluntary or unnecessary exposure to danger; entering or trying to enter or leave a moving conveyance using steam as a motor (cable and electric cars excepted); riding in or on any conveyance not provided for the transportation of passengers; walking or being on the railroad or bridge of any railway.

"2. Immediate written notice must be given the company, at its home office, Detroit, Mich., of any accident and injury for which a claim is to be made, with full particulars thereof and full name and ad-

dress of the insured; and, unless proof of death, or of loss of limb or sight, or of duration of disability, be likewise supplied within two months of time of death or loss of limb or sight, or of termination of disability, any and all claims against said company shall be forfeited. Legal proceedings for recovery hereunder shall not be brought till after three months from the date of filing proof, nor brought at all unless within six months from time when right of action shall accrue.

" 3. The insurance which may be issued to any one person, under this company's accident tickets, is limited to two tickets, aggregating $6,000, with $30 weekly indemnity; and under tickets and policies together, to $16,000, with $80 weekly indemnity. Insurance or indemnity in excess of such limits shall be void from time of issue, and the premium for such excess shall be returned to the insured or his legal representatives on demand.

" 4. Any medical adviser of the company shall be allowed, as often as he may require, to examine the person or body of the insured in respect to alleged injury or cause of death."

Soon after purchasing these tickets, Davis embarked on a steamer for his home in Arkansas. About four o'clock on the morning of the thirteenth, he was called, at a point a few miles below the place of his destination, in order that he might be ready to disembark on reaching there. He came from his stateroom, partially dressed, in response to

this call, exchanged a few words with acquaintances, turned and went out of the cabin to an open gangway leading to the rear of the boat. This was the last seen of him. Before and after reaching his point of disembarkation, a thorough, but fruitless, search was made for him, and it was finally concluded by the boat's officers that he had fallen overboard, and was possibly drowned. Unavailing efforts were made to find the body, and these continued for a considerable period of time. Becoming convinced that he was dead, the family and friends of Davis, within sixty days after his disappearance, notified the general agent of the company, in Memphis, of the facts, and, at the same time, communicated, by letter, with the plaintiff in error, at its home office in Detroit, giving full details thereof, and, in these letters, they made the claim that this was a death within the terms of the four tickets, though no formal proofs of loss were submitted. In July, 1895, a body was found in the mud or sand of the Mississippi River, which, although in an advanced stage of decomposition, was identified as Davis' by a number of witnesses. After this discovery, the company still declining to pay, this suit was brought upon all the tickets of insurance, resulting in a verdict and judgment for the full amount claimed and interest. From this judgment an appeal has been prosecuted to this Court.

1. It is insisted that the verdict of the jury is unsupported by any material evidence of the death of

Davis. The facts with regard to his disappearance and the subsequent discovery and identification of a body as his have already been stated. While it is true that there was some conflict of testimony as to certain points of identity, yet there were witnesses who testified with much positiveness that they were familiar with deceased in his lifetime, and that they recognized this body as his, from certain physical marks upon it still discoverable, as well as from the clothing upon it, that was yet in a state of comparative preservation, and which they swore corresponded with that Davis wore at the time he disappeared. Crediting these witnesses, as the jury did, it cannot be successfully urged that the verdict as to this is not sustained by material evidence. A verdict will not be disturbed by this Court when there is legitimate evidence to support it, there being no other error. *Railway* v. *Mahony*, 89 Tenn., 311.

2. It is said that the omission to furnish preliminary proofs of death was an absolute bar to recovery, and that the trial Judge was in error in not so directing the jury. In his declaration the plaintiff had averred that notice and full proof of death was given to the insurer, as required by the tickets sued on. By the second of its pleas on this point the defendant put its defense into an affirmative form, and, after setting out the condition as to notice and proof, a noncompliance with which, by its terms, worked a forfeiture of the insurance, then alleged that no proof of the death of the assured

was given within the two months from the date of its occurrence. To this plea the plaintiff replied that, within the period allowed for making proofs, the representative of the assured had "several conversations" with the general agent for the State of the insurance company, and that in them this agent said that his company would not pay this loss "because these tickets did not cover a disappearance," by which it is averred there was a waiver of proof of death. Thereupon the company filed a rejoinder denying the matters set forth in the replication.

Then, as to this, there was only a question of fact left to be submitted to the jury—that is, whether the general agent had made this statement to the representative of the deceased. If he did, then there is no doubt that its legal effect was to relieve the parties interested from making preliminary proofs. "A refusal to pay on any other ground or a denial of liability without giving reasons, waives the furnishing of proofs or defects in them if they have been furnished." 2 May on Ins. (3d ed.), Sec. 469.

On this question of fact there was one witness who testified with positiveness that the general agent placed the company's declination to pay on the distinct ground that this was simply a "disappearance" of Davis, and, as such, not covered by the insurance. This was material evidence upon which to rest the verdict of the jury, so far as this point was concerned. *Railway* v. *Mahony*, *supra*.

3. But it is urged that, however it may be as to the liability of the company upon two of the tickets, aggregating $6,000, in view of the condition upon the back of each of these tickets limiting its liability to that sum, it was a great injustice to hold it for $12,000 and interest.

As has been already stated, there were four tickets of $3,000 each, sold at the same time and by the same agent to Davis. There is no testimony in the record to suggest that the purchaser's attention was called to this condition, or that he had any notice of any limitation upon the authority of the agent in the sale of tickets, or, in fact, that there was any limitation upon his powers, except as imposed by the tickets themselves.

But, while the question of the waiver of this condition, resting upon the sale under the circumstances detailed, was very much debated at the bar, yet we did not undertake to settle it, but rested the right of the plaintiff below to recover on all these tickets upon another and wholly independent ground. In order that this may be clearly understood, it is again necessary for us to refer to the pleadings so far as they relate to the point in hand. The declaration contained four counts, each embracing one of these tickets or policies, as they are indiscriminately called. Each of these counts averred "that the defendant is a corporation by the laws of the State of Michigan, with power and authority to issue life and accident policies; that heretofore, to wit, on

the twelfth of December, 1894, the defendant issued plaintiff's intestate a certain policy of insurance, in consideration of a premium therefor by the plaintiff's intestate," etc. To this declaration the insurance company filed four separate pleas. The first of these is what the counsel for plaintiff in error denominates the general issue, but which we will hereafter show was in no sense such; the second denied liability because of the omission to furnish preliminary proofs; the third set out the condition which relieved the company from liability in the event the assured committed suicide, and then averred that Davis did commit suicide; and the fourth quoted the condition in the ticket wherein it was stipulated that the assured "shall not voluntarily expose himself to unnecessary danger," and alleged that Davis had so exposed himself and had lost his life thereby, and that for this reason his representative was barred from recovery. It will thus be seen that the condition which it is now insisted was not only a limitation on the agent's right to sell but also upon the right of recovery by the administrator of the assured, is not plead, and was therefore not in issue under the most liberal rules of pleading, unless made so by the first of these pleas, which, as before stated, in argument is called that of the "general issue."

It is to be remembered that this is not an action of tort. On the contrary, it is an action *ex contractu* upon four different instruments of writing, issued, as is averred by the insurer, for a considera-

tion, in each one of which it agreed to pay the assured $3,000 in a certain contingency therein expressed. Now, at common law, the plea of the general issue to such a declaration would have been either *nil debet* or *non assumpsit* as a slight change in phraseology would suggest. Caruthers' History of L. S. (2d ed.), Secs. 211, 212. On the other hand, "not guilty" was the plea of the general issue in every action founded on tort save that of detinue, in which it was *non detinet.* *Id.,* Sec. 209.

It would be impossible to find, we imagine, in any text-book or decided case of recognized authority, where the plea of "not guilty" was admitted as a plea of the general issue to a declaration on either written or unwritten contracts. The very definition of a plea of the "general issue" precludes such practice. It is a denial of the allegations upon which a recovery is sought. It "has a form which varies with each action, but in any given action it is always the same. In debt on a simple contract, it is *nil debet;* in debt on a specialty, it is *non est factum;* in detinue, *non detinet;* in trover, trespass, and trespass on the case, it is not guilty; in replevin, it is *non cepit;* and in assumpsit, it is *non assumpsit.*" 18 Am. & Eng. Enc. L., 522.

The Code (M. & V.), §§ 3623, 3624, 3625, and 3626 expressly recognizes such pleading, and authorizes "a general denial of the plaintiff's cause of action equivalent to the general issue heretofore in use," but, on filing such plea, requires notice of

the real defense to be given to the adverse party. Subsequently an Act was passed, which is embraced in the Code (M. & V.), § 3627, which gave parties defendant the option to plead in accordance with the sections just referred to or according to the laws of pleading in force at the time of the adoption of the Code—that is, according to the rules of the common law. Under neither system do we think it can be seriously maintained that the plea of "not guilty" raises an issue in an action on a contract. The plea which it is now insisted has that effect is in these words: "Now comes the defendant by its attorney and for plea says it is not guilty of the matters and things as in plaintiff's declaration alleged, and of this puts itself on the country."

This is not an answer to any averment in the declaration; in legal effect it was no plea, for "every plea in bar must be adapted to the nature of the action and conformable to the count."

"If the defendant plead a plea not adapted to the nature of the action, as, *nil debet* in assumpsit or *non assumpsit* in debt, . . . the plaintiff may treat it as a nullity and sign judgment." 1 Chitty on Pl., *522; 1 Tidd Pr., *564.

If this be the sound rule, then this case stood without any plea of the general issue, and alone on the special pleas and the issues joined on them, under neither of which could the insurer avail himself of the condition in question. There are Courts of the highest respectability which hold that "stipu-

lations added to a principal contract, which are in-
tended to avoid the defendant's promise by way of
defeasance or excuse," must be specially pleaded (2
May on Insurance, 3d Ed., § 591, and note; *Stand.
Life & Accident Ins. Co.* v. *Jones,* 94 Ala., 434—
S. C., 10 So. Rep., 530), and cannot be availed of
under the plea of the "general issue." Whether
this practice would be enforced in this State as the
correct one need not now be determined, but we
have no hesitancy in stating that such conditions or
stipulations cannot be invoked as a defense, in the
absence of a plea of the general issue, and also of
special pleas setting them up. It is proper to add
that the effect of a verdict in favor of the defend-
ant going to trial upon a false plea is not involved
in this discussion. Where such is the case every-
thing that can will be implied, by fair and reason-
able intendment from the allegations in the record,
to support the verdict, but to raise such an intend-
ment a verdict in favor of the party invoking it is
indispensably necessary. 1 Chitty Pl., *674.

But it is now urged in the petition for rehearing
that this issue was raised by demurrer. It is true
that an effort was made to present it, but it was
not raised. This contention rests on the third ground
of demurrer, which is in these words: "Because
the local agent of defendant in Memphis, as appears
from the face of the tickets of insurance, made part
of the declaration, had no authority from defendant
to issue tickets of insurance to W. E. Davis in

excess of $6,000, whereas he issued them in the
sum of $12,000," etc. In our oral opinion we
called attention to this as a "speaking demurrer,"
and, as such, said that it was properly overruled.
This characterization is now called in question. Where
a declaration on its face, and without reference to
extrinsic matter, seems to be defective, the defend-
ant may, in general, demur. 1 Chitty on Pl., 662.
The demurrer admits the facts that are well pleaded,
and its only office is to refer the question of their
legal sufficiency to the decision of the Court. *Ib.*,
662. That this demurrer alleges matter *dehors* the
record is apparent when we state that the declara-
tion expressly alleges a sale of these tickets by the
company to the deceased, and the only averment
from which it can be even argued that they were
sold in Memphis is as follows: "Plaintiff avers that
his intestate came to his death by external and ac-
cidental means," etc., "whilst *en route* from the
city of Memphis, at which said policy of insurance
was issued," etc., and this is found alone in the
first count, covering only one of the tickets. There
is not a word in the declaration as to its being
sold in Memphis or by a local agent with restricted
authority. For what therein appears, it may have
been sold in Detroit by the chief officers of the
company, and simply issued or delivered to the as-
sured in Memphis.

But it is insisted that plaintiff below, by making
*profert* of these tickets, has made them and the con-

ditions on their reverse sides a part of his declaration, and thus the defendant was authorized to raise this question by demurrer. This contention, in more respects than one, is unsound, but especially is it so in claiming an effect for *profert* in a Court of common law which it does not possess. It assumes that *profert* made these tickets, with the conditions, a part of the declaration. This is an error. *Profert* is nothing more than a profession on the part of the plaintiff that he brings the paper which is the foundation of his action, into Court for its inspection and that of his adversary. The import and practical meaning of *profert* is that the party has the writing in Court ready to give his opponent *oyer* of it (1 Chitty on Pl., 365; 18 Am. & Eng. Enc. L., 510). When *oyer* is demanded and granted, then the matter therein set out becomes a part of the record, and the party, at his option, may demur or plead according to the nature of the fact disclosed. *Hobson* v. *McAuthor*, 3 McL., 241; *Duval* v. *Malone*, 14 Grat., 24. And without *oyer*, the writing proffered is not a part of the record (1 Bibb, 328, 571; 7 J. J. Mar., 219), and the Court is necessarily confined, in its consideration of a general demurrer, to the statement of the cause of action, and cannot look to any supposed paper as a foundation of the action. *Harlan* v. *Dew*, 3 Head, 503; *Martin* v. *Bank*, 2 Cold., 332.

It is earnestly pressed, however, that this holding of the Court places plaintiff in error in a worse

position than if it had not plead, but had permitted a judgment by default to go; that, in such a case, while the judgment would admit plaintiff's right to some damage, yet, upon the execution of the writ of inquiry, the company would be permitted to avail itself of the condition in question, in order to reduce recovery. It may be conceded that this is a case which, upon judgment by default, could only be settled by the intervention of a jury, yet the effect would not be as now contended for. In *Warren* v. *Kennedy*, 1 Heis., 437, this Court said: "We hold that, where there is a failure to plead and a judgment by default at law, the effect of the judgment is the same as that of a judgment *pro confesso* in equity, which admits the allegations of the bill." In *Union Bank* v. *Hicks*, 4 Hum., 326, it is said: "It is laid down in all the books on practice, and is unquestionable, that a judgment by default is an admission of the cause of action," and it was there held that, in an action against a bank for neglect in making demand of payment of notes intrusted to it for collection, and in giving notice to the indorsers, upon the execution of the writ of inquiry, after judgment by default that evidence that one of the indorsements was a forgery, was inadmissible.

Applying this rule to the case at bar, where, in the declaration, the purchase of $12,000 of accident policies, for a consideration, from the company, the death of the assured within the terms and life

thereof had occurred, and notice and proofs were distinctly averred, after judgment by default, upon the execution of the writ, the defendant would not be permitted to show a purchase from an agent whose authority to sell was limited to $6,000. On the contrary, all the jury would find to do in executing the writ would be to give interest on the amount of these ticket policies within their discretion.

Nor is there anything in *Phœnix Ins. Co.* v. *Munday*, 5 Cold., 548, or *Plowman* v. *Foster*, 6 Cold., 52, to support the contention of plaintiff in error. In both of these cases pleas of the general issue, warranted by the nature of the actions, were put in, and in each one the question was as to the scope of the plea in admitting evidence.

After a careful review of the record, we feel constrained to adhere to the conclusions heretofore announced. We are the less reluctant to do so because we believe that this is in accord with the merits of the case, for not only were these tickets embraced in one sale by the local agent in charge of them, but it is apparent that both the general agent for Tennessee of this company, located in Memphis, where these tickets were sold, and the president of the company, at Detroit, were fully advised in their official capacities, immediately after the death, of all the details of this claim, and neither this general agent, in his several conversations with, nor this president, in his reply to the letters of the representatives of Davis, gave an intimation that the

local agent exceeded his authority in the sale of these tickets. It was only after this suit was instituted that this defense was made, and then without tendering or offering to pay back the money received by the company for the tickets which it now insists are void and uncollectible.

The petition for rehearing is overruled, and the judgment of affirmance heretofore pronounced will be maintained.