JAMES McQUEEN, Trustee, v. CLEVELAND NATIONAL FIRE INSURANCE COMPANY.

Eastern Section. ———— —, ——.

Geo. S. Childs, of Knoxville and Kramer & Kramer, of Maryville, for appellant.

Brown & Johnson, of Maryville and James B. Wright, of Knoxville, for appellee.

SNODGRASS, J. This is a suit by a trustee in bankruptcy to recover on a policy of fire insurance taken out by the bankrupt, one W. R. Fronberger, on November the 3rd, 1921, on a residence on Webster street in Maryville Tennessee, worth as the proof shows about $4000.

The policy was alone upon the house and its fixtures and was in the sum of $3500; and insured him against loss by fire from November 3rd at noon 1921, to November 3, 1922, at noon.

The policy was written or printed upon a form which in case of necessity might also have been made to apply to other property than the house by proper designation of the provisions designed to accommodate such a contingency; or which, by proper designation, would be eliminated as a part of the contract.

The policy however was only on the house and its fixtures, as stated and on its face contained a provision limiting the authority of the agent to grant insurance on property other than dwellings and their contents, outbuildings and their contents; private stable barns and their contents; private garages all located in cities, towns or villages and expressly providing that the policy should be void if it purported to insure any other property or class of property.

There was however this provision in the face of the policy.

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the stipulations and conditions printed on the back hereof, which are hereby made a part of this policy, together with such other provisions, stipulations and conditions as may be endorsed below or added hereto as herein provided."

The stipulations and conditions printed on the back that are necessary, we think, to be considered in the determinations of this case are as follows:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then

by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satis-factory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to re-pair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time on giving no-tice, within thirty days after the receipt of the proof herein re-quired, of its intention so to do; but there can be no abandon-ment to this company of the property described.''

"In any matter relating to this insurance no person unless duly authorized in writing, shall be deemed the agent of this company.''

"If with the consent of this company an interest under this policy shall exist in favor of a mortgagee or of any person or cor-poration having an interest in the subject of insurance, other than the interest of the insured as described herein, the conditions here-inbefore contained shall apply in the manner expressed in such pro-visions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto.''

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and un-damaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by the company, shall render a statement to this com-pany, signed and sworn to by said insured, stating the knowl-edge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the prop-erty; the cash value of each item thereof and the amount of loss thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; and change in the title, use, occupation, location. possession, or exposures of said property since the issuing of this policy; by whom and for what purpose and building herein described and the several parts thereof were occupied at the time of fire.''

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each

selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

"This company shall not be held to have waived any provisions or conditions of this policy or may forfeiture thereof by any requirement act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

ASSIGNMENT OF INTEREST BY INSURED.

The interest of ————— as owner of the property covered by this policy is hereby assigned to ————— subject to the consent of THE CLEVELAND NATIONAL FIRE INSURANCE CO.

(Signature of the insured.)

Dated ————— 19———            —————————, Agent.

NOTE—To secure Mortgagees, if desired, the policy should be made payable on its face to such Mortgagee, as follows: Any loss, under this policy that may be proved due to the assured shall be payable to the assured and John Doe, Mortgagee.

CONSENT BY COMPANY TO ASSIGNMENT OF INTEREST.

THE CLEVELAND NATIONAL FIRE INSURANCE COMPANY hereby consents that the interest of ————— as owner of the property covered by this policy be assigned to

Dated ————— 19———            —————————, Agent.

W. L. Timmerman, General Agent,
    Madison Avenue Building,
        Memphis, Tennessee.

STANDARD DWELLING HOUSE POLICY.

Expires   November 3rd, 1922,

Property   Dwelling.

Amount ........$3,500

Premium ......   $22.75

W. R. Fronberger,

NO. D 81030.

THE CLEVELAND NATIONAL FIRE INSURANCE COMPANY CLEVELAND, OHIO.

T. N. Brown, Jr.

Agent.

Maryville, Tenn.

The insured property was consumed by fire on or about December 16, 1921.

There was no notice as required by the policy given by Fronberger or any sufficient action taken by him personally to comply with the conditions of the policy so as to fasten a liability upon the company.   But claiming the same to be in time and of sufficient efficacy it there was relied upon a certain notice of the fire alleged to have been given by the bank of Blount county, who it was claimed had such an interest in the insurance as that the steps it took to give notice of the fire was sufficient. But that in any event the Insurance Company had so conducted itself as to waive all preliminary essentials to its liability; and was estopped to claim otherwise.

Fronberger became bankrupt and as indicated the trustee has filed this bill to recover on this policy for the benefit of his creditors.

On September 7, 1922, the attorney for the trustee sent to the Company the following letter:

"Cleveland National Fire Insurance Company,

Cleveland, Ohio.

"Gentlemen:

"Your Company has insured the property of W. R. Fronberger of Maryville, Tennessee, to the amount of $3500, being policy No. D. 81030 and your local agent being T. N. Brown, Jr., Maryville, Tennessee.

"The property covered by this insurance has been destroyed by fire some months ago and I understand this matter has been held pending some litigation now in Maryville.   Mr. Fronberger is now in Bankruptcy and the writer is attorney for the trustee, James McQueen.

"I take it you have made investigation relative to this claim and origin of the fire, etc.

"You are notified that, unless this claim can be satisfactorily adjusted within fifteen days from the date of this letter, we will without further notice to you, on behalf of the trustee in

bankruptcy, institute suit in Maryville, Tennessee, for the collection of the face of the policy.

"Yours very truly,

"GSC<sub>—</sub>—oh

"Exhibit No. 1 to dep. of Geo. S. Child.
"Filed November 24, 1923."

Receiving no satisfactory response from this, this suit was instituted by the trustee also claiming an efficacy from this notice.

The notice that had been given by the bank was without date but within sixty days and is as follows:

"The Cleveland National Fire Insurance Co.,
"Cleveland, Ohio.
"Gentlemen:
"IN RE: W. R. FRONBERGER, FIRE INSURANCE POLICY #80030.

"The property of W. R. Fronberger covered by the above fire insurance policy of your company recently burned down.

"This policy had a loss payable clause to the Bank of Blount County, Maryville, Tennessee. W. R. Fronberger is still indebted to the Bank of Blount County in a considerable sum of money which is secured by liens on the property covered by the above policy.

"We, therefore, notify you of such fact, and hope in settling the loss of W. R. Fronberger, you will take this matter up with the Bank of Blount County.

"Yours Truly,
"CRAWFORD & GODDARD,
"Per Goddard."

The answer admitted the insurance according to the terms of policy, the bankruptcy of Fronberger and the appointment of the trustee in bankruptcy, but claimed not to be advised as to truthfulness of allegation that Fronberger owned the residence upon which the policy was issued, its value or that he continued to own it until the fire regarding which it was denied that the fire was accidental.

It was denied that proper notice was given as required by the policy and it further denied that all requirements on the part of Fronberger with reference to the policy were fully met.

As further manifesting the allegations of the bill, and the defenses thereto the answer continued as follows:

"Respondent denies the allegation of paragraph five of complainant's bill to the effect that its agents and adjusters were sent to the scene of the fire and that they made a full investigation of said fire. Respondent further denies the allegation to the effect that it had full knowledge of all the facts connected with the fire. Respondent further denies that said Frone-

berger gave any notice to it or that notice was given to it by complainant after his appointment as trustee in bankruptcy. Respondent denies that it has done anything to waive any rights that it may have under the provisions of said policy. Respondent denies that any formal proof of loss was given and it denies that it did anything to waive the necessity of formal proof of loss or other requirements set forth in said policy as a condition precedent to bringing suit. Respondent denies the allegation of complainant's bill that it is estopped to set up as a defense the failure of the complainant, or of said Froneberger, to make formal proof of loss or comply with any of the stipulations in said policy as a condition precedent to bringing suit thereon.

## VI.

"Respondent knows nothing of the allegations in paragraph six of complainant's bill and in so far as the allegations are material it demands strict proof thereof.

"Respondent denies that any notice given to it by the Bank of Blount County would inure to the benefit of complainant.

## VII.

"Respondent admits that it has not paid said Fronberger or the complainant and denies the right of complainant to recover under said policy.

## VIII.

"Respondent denies the allegation that its failure and refusal to pay said loss for the burning and destruction of said building has not been in good faith and that its failure to do so has inflicted additional expense, loss and injury upon the complainant and the estate of the said Fronberger.

"Respondent denies that complainant is entitled to recover the amount set forth in the face of the policy and it denies that he is entitled to recover interest thereon. It further denies that complainant is entitled to recover 25 per cent penalty and attorneys fees, or any other amount or amounts.

## IX.

"Respondent denies that complainant is entitled to have a decree against it for the sum of $3500 with interest and penalty, or for any other amount or amounts.

"Respondent denies that complainant is entitled to any relief whatsoever against it as prayed for in complainant's bill.

## X.

"Respondent says that among other reasons why it has not paid this loss and should not be required to do so is that neither Fronberger nor any other person has complied with the provisions of said policy by furnishing proof of loss within sixty

days after the fire as provided in said policy. Respondent says that neither Fronberger nor any other person has ever furnished it a proof of loss, as required by the policy.

"And now having fully answered, this respondent prays to be hence dismissed with its reasonable costs."

Aside from that heretofore indicated other proof was taken and the cause heard before the Chancellor upon the entire record, who dismissed the bill holding that complainant was not entitled to recover anything off of the defendant.

It was further ordered adjudged and decreed by the court that defendant recover of complainant and his securities all the costs of the cause, awarding execution. Complainant excepted, prayed for, was granted and has perfected an appeal to this court complaining here as follows:

"First; the court erred in finding that the complainant was not entitled to recover of the defendant, and dismissing the case.

"It is not denied that the property was insured by the defendant, and that it was duly destroyed by fire and the proof shows that insured complied with all the provisions of the policy, except those which were waived by the company, and therefore the complainant is entitled to recover the value of the policy."

There is a criticism of this assignment and a statement that it "should be overruled and disallowed because it is too general and does not comply with the rule of the court." But we think accompanied as it was by the previous statement of the case, and the amplification of its second paragraph and the brief following that was filed with and as a part of it, that it sufficiently and reasonably complies with the rule. The second paragraph of the assignment makes it more specific than that condemned by our Supreme Court in Acuff Company v. Bankers Trust Company, 157 Tenn., 99, 103, 7 S. W., (2nd.) 52. But we are however of the opinion that the case was properly dismissed on its merits, and that the assignment is not supported by the proof. This is not the case of a forfeiture of a policy, but the question was as to proof in fusing it with vitality, the burden of which rested upon the complainant.

It will be observed that liability was only conditionally assumed under the policy; and even though it might be said that the letter of the attorney for the bank reached the company in due course, inuring to the benefit of Fronberger, that was not all that the policy provided as an essential to create a liability.

Such expeditious notification would have enabled the company to have made upon its independent initiation such investigation had it desired to do so, as would put it in position to better judge of the proofs of the loss and its incidents, which the insured was

required to make within sixty days after the fire as a follow up of the notice, a prerequisite also of liability.

This provision of the policy was never complied with by any body. It is insisted however that it was waived by the conduct of the company.

Had these provisions been complied with, as the obligation was only to pay the value of the house as it actually existed at the time of the fire, or to replace it, then there were certain other provisions for arbitration in the event of a disagreement, all so illustrative of the utility and value of the information in the form of sworn proofs being thus early in the hands of the company, notwithstanding any investigation it might see proper to make, as justified it in making the same a contractual preliminary to the attachment of liability; nor by the terms of any other provision, was the company to be "said to have waived, any provision or condition of the policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for;" also providing: "that the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

It was alleged that after the fire defendant had sent its adjusters and had fully informed itself. While this was denied, and remained unproven, it seems that it would have been unimportant had it done so by the express terms of the policy.

It was next contended that defendant through its agent instigated or was active in the prosecution of Fronberger under an indictment upon a charge of wilfully burning the house, and that this should be regarded as tantamount to the denial of all liability under the policy, because of this alleged felonious intervention of the insured in its destruction, and as excusing the particular furnishing of proof of loss. Insurance Company v. Thornton, 97 Tenn., 1; Snyder v. Mystic Circle, 122 Tenn., 248.

Whether such prosecution if shown as alleged would have been sufficient, or equivalent to a declaration of non-liability on those grounds we do not find it necessary to determine because it does not appear that the insurance company had anything to do with that prosecution which it appears was had and the defendant acquitted. It does appear that T. U. Brown who was the local agent issuing the policy was a witness in that prosecution by the fire marshall, and that he was seen to consult with such marshall and was examined as a witness in the case.

While this prosecution and his bankruptcy may account in a way for Fronberger's failure to take steps to vitalize his insurance, it

is too far removed from the inference claimed for it to aid complainant.

In the first place it is but natural if a prosecution was instituted that some one who knew the facts about the taking out of the policy on the burned property, should be summoned. What more natural than that the local agent who issued it should be summoned and that the prosecutor should consult with him. His agency to sell insurance would not be presumed to include an agency to prosecute some one for a felonious firing to obtain the insurance. That would be rather a delicate and somewhat to perilous a matter to be supposed as comprehended in an otherwise safe employment to sell insurance, though the policy itself as it might relate to the circumstance in a somewhat supererogating way provided that, "in any matter relating to this insurance no person unless duly authorized in writing shall be deemed to be agent of this company. And as only the circumstance related appears as a basis for this claim, it must be regarded as unproven that the company has made any claim as to this policy except such as were made at the time of the filing of this answer and as contained therein.

Nothing can be predicated on the letter of the trustee as reviving the policy which was not made effective within the time it was possible to do so. The trustee would stand in the shoes of Fronberger whose title and right were vested in him by the bankruptcy proceedings and could claim no superior rights. As theretofore the policy had become functus through failure to comply with its conditions, it evidenced (nor did any other proof), no right of recovery in the trustee. It appears that there was no error in the decree of the Chancellor in the particulars cited. The assignment is overruled and his decree is affirmed with costs against appellant and his securities.

Portrum and Thompson, JJ., concur.