HENDERSON *v.* NEW YORK LIFE INS. CO.

(*Nashville,* December Term, 1951.)

Opinion filed February 9, 1952.

Petition to Rehear denied June 7, 1952.

48

WILLIAM D. BAIRD, and WILLARD HAGAN, both of Lebanon, for appellant.

J. CONNELLY EDWARDS and EMMETT H. PROCTOR, both of Nashville, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case involves the right of Matthew A. Henderson to recover a judgment against the New York Life Insurance Company, the basis of the action being a policy of insurance which insured Henderson in the event he became totally and permanently disabled.

The issue was tried to a jury in the circuit court resulting in a verdict for the plaintiff. At the close of the plaintiff's case (the defendant offered no evidence) the defendant moved the court for peremptory instructions on the ground that "there is no evidence upon which a verdict could be predicated in favor of the plaintiff and against the defendant." The trial judge overruled the motion and the jury, following instructions by the trial judge, returned a verdict for the plaintiff in the sum of $373.09, which included a penalty of $74.62. A motion for a new trial was seasonably made and overruled. Thereupon an appeal was prayed and granted to the Court of Appeals. The case was reversed and dismissed on the ground that the trial court was in error in refusing to grant the defendant's motion for a directed verdict. This was the only assignment of error considered on the appeal, the contention being made that there was no evidence that the plaintiff had become totally and permanently disabled, and no evidence that he had made due proof of such disability, as required by the policy. Certiorari was granted and oral argument heard.

The assigments of error in the petition for certiorari are that the Court of Appeals erred in holding (1) "that there is no evidence to support the verdict of the jury," and for that reason the trial judge should have sustained the defendant's motion for a directed verdict. (2) "The Court of Appeals erred in finding and adjudging that the defendant in error, petitioner here, did not become

totally and permanently disabled by Thrombo-Phlebitis prior to June 22, 1945.''

Preliminary to the question to be decided the Court of Appeals made the following statement, to which there is no exception:

''By the policy defendant insured plaintiff's life for $2,000, and promised to waive premiums and pay benefits for total and permanent disability occurring before he became 60 years of age, subject to the conditions set out in section 1 and subsections 1, 2, and 3. The material part of section 1 was as follows:

'' 'Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the Policy on which the Insured's age at nearest birthday is 60 years and subsequent to delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has existed for not less than sixty days   *   *   *  '  (then the premiums would be waived and the benefits paid, as provided in subsections 1 and 2 of section 1).

''The policy was issued June 22, 1918, and plaintiff was born August 3, 1885. So he became 60 years of age August 3, 1945, and the policy anniversary nearest that date was June 22, 1945. His declaration alleged that he had become totally and permanently disabled on May 3, 1945, and had made due proof of his disability; and that the bodily injury and disease by which he had been disabled was thrombo-phlebitis. The averment as to this was as follows:

" 'Since on or about the third day of May, 1945, the specific bodily injury and disease suffered by Plaintiff, from which and because of which he is wholly and totally permanently disabled, within the meaning and terms of this said insurance policy, is thrombo-phlebitis, which condition prevents Plaintiff from being on his feet to any extent as well as causing Plaintiff's breathing to become very difficult with highly increased heart action, Plaintiff suffers incessantly with his feet and legs.' "

The plaintiff suffered a severe injury on May 3, 1945, while mowing a grass lot with a tractor mowing machine. The machine struck something which caused him to be thrown from his position on the tractor and across the mower. His right leg was caught in the shaft and "it beat all the flesh" off his shin bone. He continued to mow until noon and that afternoon attended a funeral of his neighbor and later went to see Dr. Eugene Johnson at Old Hickory to have his leg injury treated. His leg became infected and he went to Madison Sanitarium where he was treated with Sulfa drugs for two or three days. He later had an attack of pleurisy which was probably caused by a fractured rib. He suffered from swollen feet and lower legs and on November 11, 1946, he had an attack of thrombo-phlebitis in the calf of his right leg. A few days later he had another attack in the left leg and still another on December 30, 1946. On December 31, 1946, he went to Vanderbilt Hospital where he was treated for thrombo-phlebitis until January 23, 1947. There is no doubt but that he suffered from this disease up to the date of the trial. The medical testimony is that phlebitis results from blood clots in the veins and may be caused by infection. The plaintiff testified he had not been able to do any work on the farm since his injury on

May 3, 1945; that he could not walk and was compelled to sit in a chair with his feet on a level with his hips.

The testimony of lay witnesses is that Mr. Henderson was totally disabled from doing any work from May 3, 1945, until the trial in May, 1949. A neighbor, Mr. H. K. Barnett, testified that he had observed Mr. Henderson at work on his farm for several years and that he was very active; after the spring of 1945 he didn't see him working any more just sitting in his car and "kind of loafing and sitting about and walking with a stick." When asked as to the difference in his appearance replied, "Well, he aged a lot. He had the active working man's ways before then and after that more the old man type and retired attitude." Mr. Noel Nokes, another neighbor, had known the plaintiff for 55 years, and testified that "He hasn't been able to work since May 1945." "He has not been able to walk very much * * * he hasn't been able to do manual labor." The foregoing lay witnesses and others were not cross-examined and there was no exception to their testimony.

Mr. Henderson's son, Andrew, testified that he reported his father's condition to the insurance company and "on or about February 2, 1947," obtained blanks from the company's office in Nashville and that a report was thus made and claim filed according to the provisions of the policy. The reason for the delay in filing the claim was that the policy was taken out in 1918 and they did not recall the disability clause in it. He testified as to the nature of the accident, the treatments administered to his father at Madison Sanitarium and Vanderbilt Hospital; "that he had not done any farm work or any kind of work at all since May 3, 1945."

The only medical testimony in the record is a deposition by Dr. Eugene Johnson. He testified that Mr. Hen-

derson had been under his care since May, 1945. Following the treatment in Madison Sanitarium on May 21, and 22, 1945, his condition was "weakness, tiredness, blood count showed marked degree of anemia" and "general run down condition." The exact date that Dr. Johnson diagnosed plaintiff's case as thrombo-phlebitis is not clearly shown in his deposition. According to his opinion "it did not develop for several months after his initial injury." He first noticed that he had "shortness of breath" when he walked and had to sit down. When asked about his heart trouble and shortness of breath as indicating phlebitis he replied, "I don't recall exactly when this phlebitis took place, but certainly at the time that he developed that at any marked degree, he became a very sick man." The plaintiff had testified that he had been having "shortness of breath throughout the summer of 1945 and it continued up until November 11, 1946." (Tr. p. 48). When questioned as to the extent of plaintiff's disability, the following appears in Dr. Johnson's deposition:

"A. Mr. Baird, if you mean has Archy (Henderson) been totally disabled I can answer unequivocally.

"Q. That is all I am asking? A. He has been totally disabled.

\* \* \* \* \* \*

"Q. Just put it this way from May 3, 1945 until the present time take out the word permanent but from that time has he been totally disabled? A. Yes sir." (Tr. p. 107).

\* \* \* \* \* \*

"Q. Is this disease frequently caused by a trauma

or not, Doctor? A. It is frequently caused by an infection, it may follow a trauma." (Tr. p. 89).

With all deference to the learned Court of Appeals, we think, from the foregoing undisputed evidence, the court was in error in holding that the initial injury had healed and that the disability complained of was not total and permanent until sixteen months after the injury. We agree with the statement of the Court of Appeals that if the plaintiff is to recover the evidence of his disability must conform to his declaration. But we are not justified in limiting plaintiff's averment that his disability is solely caused by thrombo-phlebitis if there is found an averment that his disability is due to the *"injury or disease."* In addition to the averment referred to by the Court of Appeals (and copied in this opinion) we find the following in the declaration:

"Plaintiff avers that on or about the third of May, 1945, he became 'totally and presumably permanently disabled,' there being an impairment of his body and he has been and is disabled by bodily injury or disease so that he is wholly prevented from performing any work, from following any occupation or from engaging in any business for remuneration or profit, and that said condition is presumably permanent within the provisions of the policy or contract of insurance, for that Plaintiff's disability has existed continuously since on or about May 3, 1945 to this date. The Plaintiff's bodily injury or disease is of such a nature as that it is reasonably certain that such disability will continue during the remaining life time of the Plaintiff."

The gravamen of the plaintiff's action is that he became totally and permanently disabled on May 3, 1945, and that it presumably would continue. If he had a right

of action at all it rested solely upon the terms of the policy wherein the defendant contracted to pay benefits to the insured in the event he became "wholly disabled by bodily *injury or disease*" and to waive the payment of premiums. The policy further provides that the company may from time to time, but not oftener than once a year, demand proof of the insured's disability and upon failure to furnish such proof "no further premium shall be waived nor income payments made."

The policy upon which this suit is brought must be construed favorably to the insured so as to support it, not restrictively whereby it would fail. Moreover in passing upon the motion for a directed verdict for the insurance company on the ground that there is no evidence to support the jury's verdict, we can only examine the evidence tending to support the cause of action and disregard all countervailing evidence. *Moody* v. *Gulf Refining Co.,* 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243.

In the case before us it is reasonable to infer that the disease of thrombo-phlebitis, which followed the accident and injury was the result of the injury. There is nothing in the record to justify an inference that it had its inception independently of the accident and after the insured had passed his sixtieth birthday. Dr. Johnson could not recall the time when the disease set in in the relation to May 3, 1945.

In 45 C. J. S., Insurance, Sec. 776(d), page 813, it is said:

"If the accident causes a diseased condition or infirmity, which, together with the accident, results in insured's death or disability, the accident is the sole and proximate cause of such death or disability, within the coverage of the policy, for which insurer is liable, and such recovery is not precluded

by an exception in the policy, which exempts insurer from liability for disability or death which results from bodily infirmity or disease, except in cases where the policy expressly excludes liability with respect to certain specified diseases, regardless of the cause thereof.''

We think we have pointed out with sufficient clearness that there was material evidence before the trial court and jury that the insured became totally and permanently disabled prior to June 22, 1945, the nearest anniversary to his sixtieth birthday. It was at least sufficient to make an issue for the jury.

There is no merit in defendant's contention that the Court should affirm the Court of Appeals on the grounds, (1) that certain doctors at Vanderbilt Hospital, who treated the plaintiff, were not called to give evidence of his disability, and (2) that the case involves an issue which can be determined alone ''by expert testimony.''

The cases cited in support of the first proposition have no application because the witnesses were not under the control of petitioner. *Standard Oil Co.* v. *State*, 117 Tenn. 618, 672, 100 S. W. 705, 10 L. R. A., N. S., 1015. They were as available to the company as they were to the plaintiff.

The cases cited in support of the second insistence are not controlling, because the plaintiff's injury, and whether or not it resulted in total and permanent disability, did not involve an issue ''with respect to which a layman could have no knowledge.'' The lay witnesses were not called on to state if the plaintiff's disability was caused by a disease. Proof of the fact that the insured walked with difficulty and that he had not worked for approximately four years was highly competent as tending to establish total and permanent disability. The testi-

mony of Dr. Johnson, the only medical expert, was not inconsistent with that given by lay witnesses. Moreover if there are contrary inferences to be drawn from his "opinions", which appear favorable to the company's insistence that plaintiff, or petitioner, is not totally and permanently disabled such inferences are not to be considered by the Court in passing upon defendant's motion for a directed verdict. *Moody* v. *Gulf Refining Co.*, supra, and cases cited. *Sovereign Camp Woodmen of the World* v. *Mankin*, 5 Tenn. App. 188, 198.

The final contention of the insurance company is that the insured did not furnish due proof of his permanent and total disability as required by the policy, that there was unreasonable delay in furnishing the proof and filing a claim. The cases principally relied on by counsel for the company, and referred to in the Court of Appeals' opinion, are *Jones* v. *Equitable Life Assur.* Soc., 177 Tenn. 644, 152 S. W. (2d) 249; *Mass. Mut. Life Ins. Co.* v. *England,* 171 Tenn. 104, 100 S. W. (2d) 982.

It appears from questions propounded by defendant's counsel to the plaintiff on cross-examination that the company's refusal to pay the claim was not the delay in furnishing proof of disability, but that the insured suffered no permanent disability. A representative of an insurance company in July, 1945, visited the plaintiff at his home. Counsel asked if at that time he was not "out in the field driving a combine" and for that reason the company's representative had to wait to see him. To which he replied, "I drove the truck from the field to the barn, yes sir." "They asked me to try and see if I couldn't work." "This insurance company tried to cooperate in every way they possibly could with me."

We think there is material evidence in the record that due notice of the plaintiff's injury, as required by the

policy, was furnished within a reasonable time after it occurred. The plaintiff's son testified that he went to the office of the defendant company in Nashville and requested "a form of notice" which was readily given him. It was later filled out and returned to the Nashville office. No question was made at that time that it came too late or that it was unreasonably delayed. That this notice was to the effect that plaintiff suffered total and permanent disability prior to his sixtieth birthday is not controverted. The only contention made was that the delay in furnishing it was unreasonable.

We think it is reasonable to infer that the defendant questioned the plaintiff's claim solely on the ground that he was not totally and permanently disabled. In *Insurance Co.* v. *Thornton*, 97 Tenn. 1, 40 S. W. 136, 138, the insured lost his life by falling from a steamboat in the Mississippi River. His body was not recovered for some time thereafter. The policy required that *"immediate* written notice of death must be given at the home office in Detroit, Michigan." Pending a settlement of the claim (notice and proof of death was not given for sixty days after deceased disappeared) an agent stated that the company would not pay the claim because "the policy did not cover a disappearance." The Court held: " 'A refusal to pay on any other ground, or a denial of liability without giving reasons, waives the furnishing of proofs or defects in them if they have been furnished.' 2 May, Ins. (3rd Ed.), Sec. 469."

In *Jones* v. *Equitable Life Assur. Soc.,* supra, the insured gave notice of his disability on October 21, 1937, the day before he reached sixty years of age. The nearest anniversary date of the policy was December 6, 1947. The contention was made that there was no proof of permanent disability *accruing prior to complainant's six-*

*tieth birthday.* It was held by the Court that "There was no proof of total permanent disability preceding complainant's sixtieth birthday." In these circumstances the insured did not comply with the terms of the policy and a recovery was accordingly disallowed. The question of waiver was not an issue in the case.

In *Mass. Mutual Life Ins. Co.* v. *England,* supra, the insured sued to recover disability benefits accruing prior to his sixtieth birthday, specifying certain diseases, but not tuberculosis. He took a nonsuit and later brought another action in which he specified tuberculosis. This was the first notice the company had that complainant was suffering from this disease. The case is not analogous to the one now before us.

Without citing and distinguishing other cases from the one now under consideration, it is generally true that in the absence of any waiver of notice there must be some material evidence that an insured is totally and permanently disabled before the anniversary nearest his sixtieth birthday. This is a condition precedent to the insured's right of action in the enforcement of the terms of the insurance policy.

In the instant case we think there is evidence of a waiver of notice and that the evidence referred to in this opinion is of such probative force that it was properly left for the jury to decide if the plaintiff was totally and permanently disabled prior to the nearest anniversary of his sixtieth birthday. The trial judge was not in error in submitting this issue to the jury; and since there was material evidence to support the verdict, this Court under all the authorities will not disturb it.

The judgment of the Court of Appeals is reversed and that of the trial court affirmed except as to the amount of the penalty. There is no proof in the record

that the defendant acted in bad faith in refusing payment of the plaintiff's claim. The insurance company will pay the cost.

All concur.

## On Petition to Rehear

The New York Life Insurance Company has filed a petition to rehear complaining that the Court by inadvertence overlooked the following cases, which counsel thinks are controlling: *Brumit* v. *Mutual Life Insurance Co.,* 178 Tenn. 48, 52, 156 S. W: (2d) 377; *Prudential Insurance Co. of America v. Falls,* 169 Tenn. 324, 87 S. W. (2d) 567; *Metropolitan Life Insurance Co.* v. *Walton,* 19 Tenn. App. 59, 83 S. W. (2d) 274; and *Malloy* v. *Head,* 90 N. H. 58, 4 A. (2d) 875, 878, 123 A. L. R. 941.

The petition presents the sole question of whether or not the insured gave reasonable notice of his claim as required by the policy. The cases deal with that particular question.

We do not think the cases relied on in this petition control the case at bar. In *Malloy* v. *Head,* supra, the reason given for requiring timely notice is that the insurance company which is "burdened with the preparation, defense and payment of any judgment must have information upon which to base future actions 'as soon as is reasonably possible' after the accident." This holding is unquestionably sound, but it does not control the instant case since the New York Life Insurance Company had full knowledge of the plaintiff's injury and made every defense that could have been made had actual notice been given immediately after the accident.

In the instant case Mr. Henderson had failed to recall that his policy of insurance had the disability clause in

it, although he had paid the annual premiums for approximately 27 years. Conceding that the notice and proof of loss were not given until a year and a half after the accident, we think it was not a bar to the insured's right to enforce payment of indemnity under the policy. The courts have not undertaken to set up a statute of limitations within which suits of this kind must be brought. A simple statement of the facts in the cases relied on by petitioner is enough to distinguish them from the case at bar. Thus it was held that a delay of five years and four years, after full knowledge of the insured's injury, as in Brumit's case and Walton's case and also in Falls' case, without notice of any disability, is unreasonable.

In *Prudential Ins. Co.* v. *Falls,* supra, [169 Tenn. 324, 87 S. W. (2d) 567,] the insured filed his claim "five years after the cancellation of his policy, and two years and eight months after his physician informed him that he had tuberculosis and should not work." His claim was denied because "the contract of insurance had ceased to exist." In Brumit's case the Court cited Falls' case and denied recovery on the ground that delay in giving notice and proof of loss after approximately five years was unreasonable. In *Metropolitan Life Ins. Co.* v. *Walton,* supra [19 Tenn. App. 59, 83 S. W. (2d) 278,] there was a delay of almost four years in giving notice. It was there held:

"What is a reasonable time is ordinarily a question for the jury. 7 Cooley's Briefs on Insurance, 5915, 5916; *Metropolitan Casualty Ins. Co. of New York* v. *Johnston,* [3 Cir.], 247 F. 65, 7 A. L. R. 175. But there must come a point where the matter becomes one for the decision of the court, where a de-

lay, by reason of its duration and lack of attendant excusing circumstances, is clearly unreasonable, it is the duty of the court to so declare. 7 Cooley's Briefs on Insurance (2d Ed.) 5916; 14 R.C.L. 1329.''

To all of the foregoing we will not disagree. But we will not agree that the cases justify the dismissal of the case at bar. The issue is one of contractual rights. Whether or not there has been unreasonable delay in giving notice should not be arbitrarily decided by the Court, even though it may be a determinative question for the court. In *Smithart* v. *John Hancock Mutual Life Insurance Co.*, 167 Tenn. 513, 520, 71 S. W. (2d) .1059, 1062, Mr. Justice Swiggart quotes with approval the following sound statement from *Joyce on Insurance*:

'' ' So it is declared that it is well settled that when liability has become fixed by the capital fact of loss within the range of the responsibility assumed in the contract, courts are reluctant to deprive assured of the benefit of that liability by any narrow or technical construction of the conditions and stipulations which prescribe the formal requisite by means of which this accrued right is to be made available for his indemnification.' ''

Where the policy of insurance had continued in full force and effect for 27 years the mere failure of the insured to recall that it contained a disability clause should not *as a matter of law* prejudice his rights to claim indemnity against the company. If we are to indulge in any degree of liberality in determining the right of the insured in the case before us, it cannot be said that his contract of insurance ''had ceased to exist.'' Moreover, it is our well considered opinion that where there is doubt

as to whether or not notice and proof of loss are given within a reasonable time the issue should be resolved in favor of the insured and not the insurance company.

The petition to rehear is denied.