Herbert CARPENTER, Appellant,

v.

Perry L. KING, Appellee.

Bertha CARPENTER, Appellant,

v.

Perry L. KING, Appellee.

Court of Appeals of Tennessee,
Western Section.

May 16, 1972.

Certiorari Denied by Supreme Court
Nov. 20, 1972.

Brown & Brown, Chattanooga, for appellants.

Bishop, Thomas, Leitner, Mann & Milburn, Chattanooga, for appellee.

MATHERNE, Judge.

The plaintiffs Bertha Carpenter and her husband Herbert Carpenter sued the defendant Perry L. King for damages resulting from injuries received when the tractor-trailer rig driven by the defendant ran into the automobile owned and operated by Bertha Carpenter, and in which Herbert Carpenter was riding as a passenger. The lawsuits were consolidated for trial and on appeal. At the close of all the proof, the Trial Judge directed a verdict in both lawsuits in favor of the defendant. Both plaintiffs assign that action of the Trial Judge as error.

The plaintiff Bertha Carpenter was seriously injured by the impact, and could not remember any of the details leading up to and during the collision. Bertha Carpenter is 61 years of age, and Herbert Carpenter is 87 years of age.

The collision occurred on U. S. Highway 27 in the town of Daisy, Tennessee, in Hamilton County. At the scene of the collision Highway 27 is marked for two lane traffic, and extends generally north and south. The plaintiff Herbert Carpenter testified that he and his wife had been in the Owens Drug Store located on the east side of the highway. Upon leaving the drug store they got in the automobile, and Mrs. Carpenter backed up and made a circle in the private parking lot and drove out of the parking lot to the east edge of the highway, where she stopped before en-

tering onto the highway. Mr. Carpenter testified that he looked both ways, and there was no traffic approaching from either direction. Mr. Carpenter stated his wife thereupon drove out onto the highway, turned left thereon, and proceeded southwardly in the southbound lane. Mr. Carpenter's description of the collision is as follows:

"The first thing I knew, first thing I saw was this mammouth truck coming towards me, and I don't know where it sprung from, but by golly there she was, coming at us and I looked at it and I says, 'Well, he'll put on his brakes,' and he kept coming and I thought all the time he was going to, you know, slow down until he got right up close and I says, 'this is it.' And I went out of the picture."

Mr. Carpenter could not say how far their automobile had traveled in the southbound lane prior to the collision. He stated that as soon as he saw the truck, he knew there would be a collision unless the truck slowed down; at one point he stated the truck was in the southbound lane traveling north, and at another point he stated he did not know which lane the truck was in, " * * * but he was headed straight for us and we was in our proper lane."

The defendant Perry L. King is 28 years of age, and he is a truck driver by occupation. On the day in question he was driving a Mack tractor pulling a low-boy trailer on which was loaded another tractor. Defendant King stated he was traveling north on Highway 27, and immediately before the collision he was driving about 35 to 40 miles per hour; there was no traffic in front of him, but some vehicles were following him. On direct examination the defendant stated he saw the Carpenter automobile and " * * * naturally, I thought it was going to stop, but it was coming out at a low speed, just kept coming right on out. I was blowing the air horn, sliding all at the same time. * * * But anyway, as I was blowing the horn,

I was hoping she would stop, but she didn't. There was nothing I could do to prevent this." King stated he collided with the Carpenter vehicle in the northbound lane at a time when the front wheels of the Carpenter vehicle were probably one foot across the center line of the highway. King stated he observed the Carpenter vehicle moving out onto the highway at a distance of about 125 feet in front of him. On cross-examination it was developed that on a pre-trial discovery deposition the defendant stated when he first saw the Carpenter vehicle it was off the east side of the highway, stopped, and facing the highway; the car started forward toward the highway, and the defendant first sounded his horn and then applied brakes; the brakes were applied at about 50 to 60 feet from the Carpenter vehicle. The defendant stated that when brakes are applied to the rig he was driving the trailer wheels will brake first, and then the tractor wheels. The tractor-trailer rig was 45 feet long.

The record included several photographs of the scene of the accident before the vehicles were moved. The evidence establishes that the left front of the defendant's tractor collided with the left side of the plaintiff's automobile in the area of the door beside the driver's seat. The tractor-trailer shoved the plaintiffs' vehicle back off the highway at an angle to the north and pinned the plaintiffs' vehicle against a utility pole at the west edge of the highway right-of-way. The after collision position of the tractor-trailer rig was at an angle northwardly off the west side of the highway with the right rear wheels of the trailer remaining on the traveled portion of the highway surface.

Plaintiffs' witness highway patrolman Tate arrived at the scene before the vehicles were moved and identified several black and white photographs as properly depicting the situation as it then existed. Trooper Tate stated his stride was three feet to a step and that he stepped off a total of 50 steps of skid marks laid down by the tractor-trailer rig. Tate testified

that the first 38 steps of the skid marks were in the northbound lane and were straight; the last 12 steps of skid marks swerved abruptly to the left across the southbound lane at an angle to the north and led to the rear wheels of the trailer. This witness placed all debris from the collision in the southbound lane; the witness did not fix the point of impact. Trooper Tate stated the posted speed limit on Highway 27 at the scene was 40 miles per hour.

The plaintiffs presented an expert witness, Mr. Earl Lewis Cook. This witness testified that by applying such factors as the type of surfacing, the percent of grade, the coefficient of friction, and the length of the skid marks, he could determine the speed of the tractor-trailer rig. He had examined the scene of the collision, and he was asked to assume as factual the patrolman stepped three feet per step, and the tractor-trailer rig skidded 38 steps straight, collided and then skidded 12 additional steps as shown. Assuming these facts and applying the foregoing factors thereto, this witness placed the speed of the tractor-trailer at 51.8 miles per hour at the beginning of the skid marks, and at 25.4 miles per hour at the point of collision.

Defendant's witness George W. Carmen was riding in the cab of the tractor. Carmen stated he saw the Carpenter vehicle moving out toward the highway from his right, and he called out a warning to King. He stated King sounded his horn and applied brakes with such force as to throw the witness into the windshield of the cab. He stated the tractor collided with the Carpenter vehicle in the northbound lane and when the front wheels of the Carpenter automobile had just crossed the center line. This witness stated the collision swerved the tractor to the left, and the tractor shoved the automobile on off the highway and into the ditch of the right-of-way.

Defendant's witness Danny Dwayne Roark testified he was working at the Sin-

clair service station at the scene of the accident. This witness was filling an automobile with gasoline when his attention was called to the highway by the horn of the tractor-trailer. Roark stated he saw the collision, and that it occurred in the northbound lane of the highway. On cross-examination this witness admitted that some portion of the Carpenter vehicle had crossed the center line of the highway, but maintained the greater portion of that vehicle was in the northbound lane when hit.

The defendant produced his expert witness Mr. Dale Medsker, who fixed the speed of the tractor-trailer rig at 35 miles per hour, plus or minus five miles per hour, at the time the skid marks began. This witness further testified that the collision occurred in the northbound lane just east of the center line of the highway. The point of impact was determined by reconstructing the events from photographs which depicted gouged out places in the highway surface just west of the center line. This expert also identified from photographs tire markings from the plaintiffs' automobile which extended across the southbound lane.

Viewing the evidence most favorable to the plaintiffs and discarding all countervailing evidence, we must conclude the defendant King was driving the tractor-trailer rig at 51.8 miles per hour at the time he applied brakes. We therefore conclude the defendant was violating the 40 miles per hour speed limit in effect at the scene. The question remains, however, as to whether that fact proximately caused the collision and the resulting injuries to the plaintiffs. See: Biggert v. Memphis Power & Light Co. (1935) 168 Tenn. 638, 80 S.W.2d 90.

The defendant insists the Trial Judge properly applied the rule as set out in Tennessee Trailways, Inc. v. Ervin (1969) 222 Tenn. 523, 438 S.W.2d 733, and as followed by this Court in Garrett v. McConkey (Tenn.App.1970) 466 S.W.2d 498. Under a somewhat similar factual situation where-

in the plaintiff's intestate pulled out onto a highway in front of a vehicle which was exceeding the speed limit, the Supreme Court in the *Tennessee Trailways* case, supra, stated:

"The record in the instant case leaves no doubt but that plaintiff's intestate rode his motorcycle up to the intersection, either hesitated or stopped, and, with the bus in unobstructed view, suddenly and abruptly crossed the highway into the northbound lane to the point of collision. It becomes too clear for argument that the asserted differential in the bus' speed simply could not be a realistic proximate cause of the accident. In the fact of uncontroverted testimony showing that plaintiff's intestate suddenly rode into the path of the oncoming bus, whether defendant's bus was traveling at 73.5 or at 63 miles per hour becomes insignificant. It is plain that the immediate cause of the collision was not the speed of the bus; but apparently the sudden and heedless entry of plaintiff's intestate onto the north side of the highway."

We conclude, under the record, the only way the plaintiffs could possibly remove themselves from the foregoing rule would be by virtue of the testimony of the plaintiff Herbert Carpenter. Again, accepting that testimony as true and discarding all countervailing evidence we must conclude: (1) The plaintiffs did stop and look at the edge of the highway; (2) The defendant's tractor-trailer was not in sight at the time the plaintiffs entered the highway; (3) The plaintiffs had crossed the highway and were proceeding southwardly in the southbound lane when struck; (4) The defendant's tractor-trailer rig was proceeding northwardly in the southbound lane; (5) The two vehicles collided in the southbound lane. The question is, must we accept that testimony when it is obviously inconsistent with and contradicted by certain undisputed physical facts?

The undisputed physical facts established by the record are: (1) The plaintiffs had an unobstructed view to the south before they entered the highway; (2) Had the plaintiffs looked in that direction before entering the highway the defendant's tractor-trailer rig would have been clearly visible to them; (3) The defendant's tractor-trailer rig was in the northbound lane of traffic, traveling northwardly, as established by the 38 steps of skid marks undisputedly laid down by that vehicle in that lane of traffic; (4) The left front of the tractor collided with the left side of the plaintiffs' vehicle in the area of the door beside the driver of plaintiffs' vehicle.

"When the testimony introduced by a plaintiff is shown by the physical facts and surroundings to be absolutely untrue, or when it is so inherently improbable as that no reasonable person can accept it as true or possible, the Circuit Judge should take the case from the jury, notwithstanding oral statements tending to show a right of action." Southern Railway Co. v. Hutson (1936) 170 Tenn. 5, 91 S.W.2d 290. See also: Nashville, Chattanooga & St. Louis Railroad v. Justice (1914) 5 Tenn.Civ.App. (Higgins) 69, and the authorities therein cited; Gordon's Transports, Inc. v. Bailey (1956) 41 Tenn.App. 365, 294 S.W.2d 313; Camurati v. Sutton (1960) 48 Tenn.App. 54, 342 S.W.2d 732; McCray v. Hughes (1964) 53 Tenn.App. 533, 385 S.W.2d 124.

In McCray v. Hughes, supra, this Court refused to apply the rule because: "There is considerable contradiction between the parties as to the physical facts, and certainly different inferences could be drawn therefrom. So, a verdict could not be directed thereon." The instant case differs in that the above listed physical facts are not contradicted, and are established by the record.

Under this record, and the undisputed physical facts, reasonable minds could reach only one conclusion: the proximate cause of the collision and the resulting injuries was the manner in which plaintiffs' vehicle was driven onto the highway di-

rectly in front of the approaching tractor-trailer rig.

It results the assignment of error is overruled, and the judgment of the Trial Court in each case is affirmed. The cost of this appeal is adjudged against the plaintiffs.

CARNEY, P. J., and NEARN, J., concur.