Donald D. DAVIS, Plaintiff-Appellee,

v.

J. B. WILSON and Sadler Brothers Trucking & Leasing Co., Inc., Defendants-Appellants.

Court of Appeals of Tennessee,
Middle Section.

Oct. 25, 1974.

Certiorari Denied by Supreme Court
May 12, 1975.

George W. Yost, Springfield, for plaintiff-appellee.

R. B. Parker, Jr., and Donald P. Paul, Nashville, for defendants-appellants.

## OPINION

TODD, Judge.

The plaintiff, Donald B. Davis, sued defendants, J. B. Wilson, driver, and Sadler Brothers Trucking and Leasing Company, Inc., owner of a transport truck, for personal injuries and property damage sustained in collision with said truck on January 3, 1972, on U. S. Highway 41 between Adams and Sadlersville, Tennessee. A jury awarded plaintiff $50,000.00, and defendants have appealed.

The first assignment of error is as follows:

"The trial court erred in refusing to grant the motion of these defendants for a directed verdict and in refusing to grant the defendants' motion for a judgment *non obstante veredicto* (or, in the alternative, for a new trial), because there was no evidence to support the verdict."

A motion for judgment non obstante veredicto (notwithstanding the verdict) is a test of the pleadings, is not a substitute for motion for a new trial, and is inapplicable to questions of evidence. Bluff City Buick Co. v. Davis, 204 Tenn. 593, 323 S.W.2d 1 (1959); Citizens Trust Co. v. Service Motor Car Co., 154 Tenn. 507, 297 S.W. 735 (1927); Buice v. Scruggs Equipment Co., 37 Tenn.App. 556, 267 S.W.2d 119 (1954); Jamison v. Metropolitan Life Ins. Co., 24 Tenn.App. 398, 145 S.W.2d 553 (1941); Nat. Life & Acc. Ins. Co. v. Amer. Trust Company, 17 Tenn.App. 516, 68 S.W.2d 971 (1934).

The first assignment must therefore be considered as being based upon a motion for new trial and for a directed verdict because there was no evidence to support a verdict for the plaintiff.

The rule has been too often stated and too long accepted to require citation of authority that, in reviewing the action of the Trial Judge on motion of defendant for directed verdict, the appellate court must take the view of the evidence most favorable to the plaintiff, give plaintiff the benefit of all favorable inferences which might be reasonably drawn from the evidence, and disregard all countervailing evidence and inferences; and, if the minds of reasonable men, viewing the evidence in such manner, might differ as to the determinative facts, then the cause should have gone to the jury. In such a case, the appellate courts will not disturb a verdict for

the plaintiff. See authorities annotated in 2–A Tennessee Digest, Appeal and Error, § 989.

■ The review of evidence in a jury case by the appellate court is not to determine where the truth lies, or to find the facts, but is only to determine whether there was any substantial evidence to support the verdict. Short Way Lines v. Thomas, 34 Tenn.App. 641, 241 S.W.2d 875 (1951); Cherry v. Sampson, 34 Tenn.App. 29, 232 S.W.2d 610 (1950).

■ Even though the members of this Court may not necessarily agree with the factual conclusions reached by the jury, this Court does not re-weigh the evidence, and if some material and substantial evidence supports the verdict, it must be affirmed. Scarbrough v. City of Lewisburg, Tenn.App., 504 S.W.2d 377 (1974).

With these rules in mind, the evidence has been examined.

According to the uncontroverted evidence, the collision occurred when plaintiff's southbound vehicle met defendants' northbound vehicle in a curve of a two-lane highway.

The curve required defendant to turn to the left and plaintiff to turn to the right, that is, defendant was on the "outside" of the curve and plaintiff was on the "inside" of the curve.

It is also uncontroverted that, at the time of the collision, it was still dark, that the weather was cold and "frosty," that there were "patches" of fog, that plaintiff's vehicle had set outside shelter during the night and had frost on windows and windshield except where plaintiff had cleaned it off before leaving home for work.

Likewise, it is uncontroverted that the left front portion of plaintiff's vehicle was in collision with a wheel or wheels at the left rear of the trailer portion of defendants' tractor-trailer vehicle.

The disputed and determinative issues of fact are:

1. Whether defendants' vehicle was wholly or partly across the center line in the path of plaintiff.

2. Whether plaintiff was contributorily negligent in driving with a partially obscured windshield, in crossing the center line to the left side of the road, in failing to see an obstruction on his own side, and/or in failing to avoid the obstruction without striking it.

The plaintiff testified that he was a road truck driver for State Stove Co. of Ashland City; that he lived in the community of Sadlersville, about a mile from the scene of his injury; that he planned to arrive at work about 6:00 a.m.; that he arose about 4:00 a.m., washed, dressed, ate breakfast and then went out and removed frost from the left half of his windshield; that, by running the engine in his automobile "the defroster had done got warm"; that he got in his car and left for work; that, on the way to work, he had just started down a hill when he saw two sets of headlights in the fog ahead and then, "all of a sudden it got dark and I had nowhere to go"; that the defendants' tractor-trailer was apparently trying to pass the truck ahead of him, then swerved his trailer to the right, but "the back of the trailer stayed out and I caught it with the car," "I caught the back tandem of the trailer."

The substance of this testimony is that, immediately prior to the collision, defendant's truck was facing plaintiff on plaintiff's side of the road; that defendant's headlights blinded plaintiff; that defendant's tractor moved to its own side of the road before meeting plaintiff; that, when plaintiff passed the lights of defendant's tractor, he was left in comparative darkness in which he collided with the rear wheels of defendant's trailer which remained on his (plaintiff's) side of the road.

Taking this evidence as true and indulging the inferences most favorable to plaintiff, there is sufficient evidence to show negligence of the defendants and to exonerate the plaintiff of contributory negligence.

Defendants attack the sufficiency of plaintiff's evidence on a number of grounds.

Defendants point out that plaintiff testified that the impact occurred only one foot inside plaintiff's lane. This is, indeed, a circumstance reflecting upon the gravity, if any, of defendants' negligence, the opportunity of plaintiff to avoid the collision and the contributory negligence of plaintiff. However, this evidence is circumstantial only, and not conclusive. It was for the jury to determine liability after consideration of this and all other facts and circumstances.

Defendants next rely upon the insistence that plaintiff testified that he collided with the *second* of *two* vehicles belonging to the defendant Sadler. Plaintiff did testify that he collided with the second of two trucks, but he did not testify that the first truck was a Sadler truck. It is true that the defendant, Wilson, testified that there was no truck ahead of him; but this contradiction in testimony involves an issue of credibility which is peculiarly within the province of the jury.

Defendants next insist that plaintiff was negligent in cleaning only one half or less of his own windshield and that he negligently drove directly into the left side of defendants' trailer. This Court cannot say that the evidence, viewed in the light most favorable to plaintiff, shows him to be guilty of proximate contributory negligence as a matter of law, hence this Court cannot set aside a jury verdict on this ground.

Defendants have submitted a comprehensive and detailed chart of the testimony. While said chart may show that the evidence preponderates against the finding of the jury (which is not grounds for reversal), said chart does not show that there is no substantial, credible, evidence to support the verdict.

In their propositions of fact, defendants point out that Leslie Watkins, driver of another Sadler-owned truck, testified that he was following the truck involved in the collision with plaintiff and that the impact took place in defendants' proper lane of travel. This testimony does contradict plaintiff's testimony, but it makes an issue of fact for the jury. For the same reason, the testimony of defendant, J. B. Wilson, that the impact occurred on his own, proper side of the road cannot be determinative.

Even though "all of the witnesses who testified to any personal knowledge" of location of debris placed *most* of it on defendants' side of the road, this would not completely and effectively erase the testimony of plaintiff, supra. There remains the issue of credibility and the known fact the debris does not conclusively establish the exact point of collision.

■ Defendants rely upon the uncontroverted fact that plaintiff's vehicle stopped on plaintiff's left (defendants' right) side of the road after the collision. This circumstance likewise is persuasive but not conclusive, for the course of travel of vehicles after collision is unpredictable and not conclusive as to manner or place of collision.

■ Defendants rely upon testimony that only part of plaintiff's windshield was clear of frost, that, by plaintiff's own admission, his vision was obscured by condensed fog on the windshield at the time of impact; and that plaintiff was driving 50 miles per hour. Of course, driving a vehicle with no vision whatsoever would be negligence as a matter of law; but obscured vision is less than perfect vision, which is a matter of degree, and projects issues of fact for the jury as to how badly the vision was obscured, whether a reasonably prudent person whould have attempted

to drive under such a handicap, and whether the obscurity of vision was one of the proximate causes of the collision.

Defendants rely upon plaintiff's statement at the scene that, " . . . the glare of the truck hit my windshield. The glare on the windshield blinded me . . . . " Apparently defendants insist that being blinded by glare of headlights on a windshield partially obscured by frost constitutes negligence as a matter of law. This Court cannot agree with such insistence. It is well known that the formation of ice, frost or fog upon a windshield in certain weather conditions is not noticeable until emphasized by a beam of light. Whether such a situation confronted plaintiff in this case was for the jury.

It is well known that when two vehicles meet on a curve, the vehicle on the "outside" of the curve (turning left) tends to direct the beams of its lights to the right side of the road and not toward the vehicle being met on the left side of the road. For this reason, if defendant were indeed on the right side of the road, the beams of his headlights would not have been directed toward plaintiff, but off the road to the right. Only if defendant were on his left side of the road, directly in the path of plaintiff, would his (defendant's) lights be expected to shine directly at plaintiff.

Defendants rely upon the rule that, where physical facts belie the truth of oral testimony, the oral testimony becomes no evidence whatever, citing Camurati v. Sutton, 48 Tenn.App. 54, 342 S.W.2d 732 (1961). In that case, the testimony of the witness, David H. Sutton, was contradicted by the physical facts testified to by him; and said facts, testified to by said witness were such as to render impossible the other facts related by him. Thus, in Camurati v. Sutton, the testimony of a single witness was internally inconsistent and impossibly contradictory: Such is not true in the present case. Moreover, as previously pointed out, the physical facts testified to by *some* of the witnesses are circumstan-

tially, but not conclusively inconsistent with plaintiff's testimony.

In Carpenter v. King, Tenn.App., 488 S.W.2d 383 (1972), authorities are cited and this theory of law is discussed. A study of said authorities will disclose that physical facts must be entirely undisputed and must by their nature, be such as to conclusively show inconsistent testimony to be untrue, before such testimony can be discarded in favor of a directed verdict.

In McRay v. Hughes, 53 Tenn.App. 533, 385 S.W.2d 124 (1964) this Court pointed out that a verdict would not be directed where differing inferences might be drawn from the physical facts, some consistent, and some inconsistent, with the testimony.

In Carpenter v. King, supra, this Court held:

"Under this record, and the undisputed physical facts, reasonable minds could reach only one conclusion. . . . "

In the present case, reasonable minds could reach different conclusions, hence the issue was for the jury.

Defendants argue various bases for the jury's evaluation of weight and credibility of testimony, however these matters are concluded by the verdict of the jury and not subject to review by this Court.

Defendants argue that they are not insurers of the safety of plaintiff who must show that his injuries are the proximate result of defendants' breach of a duty owed to plaintiff. As previously pointed out, there is evidence to support a finding that defendants' truck was on plaintiff's side of the road in a curve and that the defendants' lights blinded plaintiff. This being true (and the jury evidently so found), the grounds of defendants' liability are established.

Defendants rely upon contributory negligence of plaintiff. Driving with any obstruction to vision in any degree may be

held to be negligence. However, as previously stated, it was for the jury to determine whether the degree of obstruction was negligence under the circumstances and, if so, whether it constituted one of the proximate causes of the injury. Whether the plaintiff's driving with impaired vision, or his speed, or his failure to avoid colliding with defendants' truck were negligent and a substantial cause of his injuries were questions for the jury under the evidence.

Defendants cite authority for the proposition that a verdict must be supported by *substantial* evidence and urge that the uncorroborated testimony of plaintiff, standing alone, is not substantial evidence in his favor. Where one witness testifies with positiveness to a fact found, there is material evidence upon which to rest the verdict of the jury. Standard Loan & Accident Ins. Co. v. Thornton, 97 Tenn. 1, 40 S.W. 136 (1896).

For the reasons stated, the first assignment of error is respectfully overruled.

The second assignment of error is as follows:

"The trial court erred in failing to grant defendants' Request for Special Instructions No. 2, as follows:

I further charge you that in Tennessee, a motorist is not an insurer of every injury that might occur as the result of the operation of his motor vehicle. To recover damages, an injured party must prove the usual essential facts to establish common law negligence: that the defendant owed a duty, that he negligently breached his duty, and that the injuries were a proximate result of the defendant's negligent breach of duty."

A review of the charge given by the Trial Judge discloses that the substance of the requested charge was included in the general charge. For example, the following sentences occur at various points in the charge:

". . . Now, by no stretch of the imagination could you return a verdict against this corporation unless you first find that Mr. Wilson was guilty of negligence which caused the accident and if you should find that to be the case then your verdict should be against both defendants. . . .

.   .   .   .   .   .

Now, if you find at the time and place of the accident that the defendant violated that code section in the operation of his truck and that violation, if it was, was the direct and proximate cause of the accident then of course the defendant would be guilty of negligence. Now that is the theory briefly of the plaintiff in this case.

.   .   .   .   .   .

". . . You have two defendants in this case. The legal effect of their answer and their theory in the lawsuit is to deny each and every material allegation set forth in the plaintiff's complaint and cast the burden of proof with reference thereto upon the plaintiff who must prove his case by a preponderance of the evidence before any recovery can be had in favor of the plaintiff, . . .

.   .   .   .   .   .

"Now, I charge you that the proximate cause of an accident and the resulting injuries is that which is a procuring, efficient and a predominant cause, that act or omission or failure to act which caused or failed to prevent such injuries, an act or omission, occurring or concurring with another, which had it not happened the accident would not have happened and the injuries would not have been inflicted.

"The term negligence means the failure to exercise ordinary care. That is such care as an ordinarily prudent person would exercise under the same or similar circumstances, sometimes referred to as due care.

.   .   .   .   .   .

". . . If the defendant driver was guilty of such an act or omission and could with the exercise of ordinary care have anticipated or foreseen that an accident of such a nature as the one which occurred would probably result from such act or omission then the defendant would be guilty of negligence and if such negligence, if any, on the part of the defendants was the proximate cause of the accident and the plaintiff's injuries and damages the defendants are liable.

.   .   .   .   .   .

"It's also the duty of the defendant driver to exercise ordinary care at all times in the operation of his truck and if the defendant failed to do so then he would be guilty of negligence and if such negligence on his part was the proximate cause of the accident and the resulting injuries then these defendants are liable."

■ Where the substance of a special request is included in the general charge, it is not error to refuse the special request. Cohen v. Cook, 62 Tenn.App. 292, 462 S. W.2d 502 (1969).

The second assignment of error is respectfully overruled.

The third assignment of error is as follows:

"The court erred in failing to grant defendants' Request for Special Instructions No. 6, as follows:

I further charge you that where the physical facts are such that belie the truth of oral testimony, there can be no weight given to the oral testimony, for it becomes no evidence whatever."

The application of the rule of law embodied in this request to the facts of this case has been previously discussed. The physical facts relied upon by defendants, if true, were not necessarily inconsistent with the testimony of plaintiff.

The third assignment of error is respectfully overruled.

■ The fourth assignment of error is as follows:

"The court erred in failing to grant defendants' Request for Special Instructions No. 7, as follows:

I further charge you that assumption of the risk is a legal doctrine of this state which provides the defendants with a complete defense to the plaintiff's allegation of negligence. Where a plaintiff voluntarily places himself in a situation wherein he is aware of possible dangerous consequences, and the nature of those consequences, he is said to have assumed the risk of any injury he receives as a result. This legal doctrine will defeat a plaintiff even though he makes out a case of negligence against the defendant."

After defining negligence as previously quoted, the general charge continues:

"The defendants say affirmatively that this plaintiff drove his automobile at an excessive and dangerous speed under the conditions then and there existing. That he was driving his automobile with the windshield covered over with a sheet of ice thereby obstructing his vision. That he was guilty of violating the provisions of 816, which I will find and read to you, and that he was guilty of proximate contributory negligence in that he failed to yield to the defendant one-half of the roadway, and that the plaintiff crossed over the centerline thereof and struck the left front corner of the defendant's trailer. Now, that is the theory of the defense.

.   .   .   .   .   .

"If the plaintiff Mr. Davis was guilty of such an act or omission and could by the exercise of ordinary care have anticipated or foreseen that an accident of such a nature as the one that occurred

would probably result from his act or his omission then the Plaintiff Mr. Davis would be guilty of negligence and if such negligence, if any, on the part of the plaintiff was the proximate cause of the accident and the plaintiff's injuries then the plaintiff cannot recover.

.    .    .    .    .    .

"Now, if you find that both the plaintiff and the defendants were guilty of negligence which proximately concurred in producing the accident and the plaintiff's injuries the plaintiff cannot recover.

.    .    .    .    .    .

"Now, it was the duty of the plaintiff to exercise ordinary care for his own safety and if he failed to do so then he would be guilty of negligence and if such negligence was the proximate cause of the accident and his injuries or proximately concurred with the negligence of the defendant in producing the accident then the plaintiff cannot recover."

In Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 70, 118 S.W.2d 561 (1938), this Court said:

"[8, 9]  The doctrine of assumed risk, sometimes (as in Hatch v. Brinkley, 169 Tenn. 17, 80 S.W.2d 838), referred to as incurred risk, is usually applied to contract cases growing out of the relation of master and servant, but such is not always the case.  The application of the doctrine is often simply another way of applying the rule of contributory negligence, and frequently the difference between the two is merely a difference in the choice of language or style of expression.  In other words, the fact that one knows of potential danger and voluntarily subjects himself thereto may and often does render him contributorily negligent if accident or injury ensues." 22 Tenn.App. p. 75, 118 S.W.2d p. 564.

In view of the above quoted charge on the general aspects of contributory negligence, it is not deemed reversible error to refuse to charge the specifics of negligent exposure to risk.

The fourth assignment of error is respectfully overruled.

The fifth assignment of error is as follows:

"The court erred in failing to grant defendants' Request for Special Instructions No. 8, as follows:

I further charge you that among the things you should consider in evaluating the weight of oral testimony are these: whether the witness is interested in the out come of the lawsuit, his means of knowledge or knowing about the things of which he testifies, whether his testimony is reasonable or unreasonable, probable or improbable, whether his testimony is corroborated by that of other witnesses, and whether his testimony is supported by the physical evidence and those facts which are proven beyond doubt.  All of these things and more determine the credibility of a witness."

In this connection, the Trial Judge charged as follows:

"By a preponderance of the evidence is simply meant the greater weight of the testimony which is not necessarily determined by the greater number of witnesses, but by their character, and their intelligence and their means of knowledge touching the subject matter of their testimony, their interest or lack of interest, if any, in the results of the lawsuit, their willingness or unwillingness to answer questions propounded by the one side or the other, their prejudice or bias, if any, is apparent to you, and the consistency or inconsistency of their statements made either in or out of court, their demeanor as witnesses and the reasonableness of their testimony."

While not identical with the requested charge, the general instruction contained the general substance of the special re-

by the jury, and it is not probable that the jury was misled thereby. The inadvertence should have been even more readily recognized by counsel and called to the attention of the Trial Judge for correction at the time. D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897 (1948); McMahan v. Tucker, 31 Tenn.App. 429, 216 S.W.2d 356 (1949); Town of Lebanon v. Jackson, 14 Tenn.App. 15 (1931).

The eighth assignment of error is respectfully overruled.

The ninth assignment of error is as follows:

"The trial court abused its discretion and erred in failing to allow the foreman and the jury to fully and correctly report its verdict, and in accepting an incomplete verdict as shown in the report of the foreman, and in the method of the court in accepting and recording the verdict."

When the jury reported its verdict, the following occurred:

"THE COURT: Mr. Foreman, what is the verdict of the jury?

FOREMAN: Your Honor, we, the jury, find for the plaintiff, Mr. Davis, and against the defendants. We fix Mr. Davis' damages at a total of fifty thousand dollars, $31,000.00 being for hospital expenses . . .

"THE COURT: Well, you don't have to itemize it. Is your total verdict fifty?

FOREMAN: Fifty thousand. Yes, sir.

THE COURT: Did you allow a separate amount for the automobile?

FOREMAN: Yes, sir, that includes everything.

THE COURT: That's everything?

FOREMAN: Yes, sir.

THE COURT: All right. Is that the unanimous verdict of you ladies and gentlemen?

(JURY NODS AFFIRMATIVELY)"

Defendants insist that it was improper for the Trial Judge to interrupt the report of the foreman, especially since the report appeared to contain a mathematical error in that $31,000.00 appeared to be the amount allowed for hospital expenses which were shown to be a much smaller amount. From the above, it is evident that the foreman reported $31,000.00 as the total of a number of items of which the first was hospital expenses. The other items were never named because of the interruption. If defendants had desired the details of the foreman's report in this regard, they should have moved the Trial Judge to allow the foreman to continue. Said report was not a necessary part of the verdict, but would have been enlightening to the Trial Judge, the parties, and this Court.

There was evidence of doctors and hospital bills of $7,813.30, of an additional hospital bill of over $300.00. Plaintiff testified that he earned $9,408.01 in his last full year of employment, that, to the date of trial, he had lost two years and three months earning computed to be $21,168.00 and that his car, worth $1,000.00, was a total loss. The total of the foregoing specific items is $30,281.30. Plaintiff was unable to work at the time of trial and his doctor testified that he had suffered a 50 percent impairment of his left knee which would prevent the resumption of his former work for an indefinite period, possibly permanently. It would appear, therefore, that the jury computed plaintiff's "special damages" at $31,000.00 and that the remainder of the $50,000.00 verdict represented compensation for pain and suffering and future disability of a 35-year old man.

The evidence of damages, cited supra, negatives any suggestion that the jury erroneously concluded that hospital expenses were $31,000.00. It does not appear that

the partial report of the foreman reflects any prejudicial error on the part of the jury.

Since there was no request for special verdict or finding of facts by the jury, or for completion of the foreman's report, and the interrupted report of details of damages was not a necessary part of the verdict, the partial announcement by the foreman or the failure of the Court to hear the remainder of his report was not reversible error.

The ninth assignment of error is respectfully overruled.

The tenth assignment of error is as follows:

"The court abused its discretion and erred in failing to properly poll the jury as requested by defendants, and in such a manner as to ascertain if the verdict announced by the foreman was the verdict of each and every juror as shown in the method the trial judge polled the jury."

Immediately after the report of the jury, quoted supra, the following is recorded in the bill of exceptions:

"MR. PARKER: We would like to ask for a poll, Your Honor.

THE COURT: Call Miss Ann in here and let her poll the jury.

(THEREUPON THE JURY WAS ASKED INDIVIDUALLY IF THEY AGREED WITH THE VERDICT AND ALL MEMBERS ANSWERED AFFIRMATIVELY)"

"MR. PARKER: Your Honor, we would like for the jury to be polled on remote or proximate negligence.

THE COURT: Well, they have returned a general verdict and they have been polled on that and I think that is sufficient.

MR. PARKER: Note an exception.

THE COURT: All right."

Defendants argue:

"Defendants contend that the proper question to be put to each juror is whether the verdict announced by the foreman was his or her own verdict. To fail to ask the question in this manner is to leave open the possibility of one or more jurors who, as a minority, agreed that that majority decision would prevail. In this situation, it is possible that one or more jurors whose individual vote was always for a defendants' verdict, or for a smaller plaintiff's verdict, may have "agreed" with the announced verdict without ever acknowledging that it was his or her own individual verdict. For the trial court to fail to perform this simple task correctly is inexcusable, for it leaves the defendants to wonder forever whether the plaintiff actually received a unanimous verdict."

The complaint as to the manner of polling the jury comes too late. If, as defendants insist, the form of the poll left some doubt as to the unanimity of the jury, counsel should have moved for a poll in a particular form. As stated in Smith v. Weitzel, 47 Tenn.App. 375, 338 S.W.2d 628 (1960),

"As was said in Dixon Stave & Heading Co. v. Archer, 40 Tenn.App. 327, 291 S.W.2d 603, in the absence of a statute prescribing the method of conducting a poll of the jury, the method is entirely within the discretion of the trial judge, whose judgment will not be disturbed unless it clearly appears that there was abuse of discretion. It is further pointed out in said opinion that no particular form of answer is essential on the polling of a jury it being sufficient if the answer of the juror indicates with reasonable certainty that the verdict is his own.

"In the instant case, we think the trial judge, in his discretion, did ascertain with accuracy the verdict of each mem-

ber of the jury and we, therefore, overrule the assignment directed at this alleged error." 47 Tenn.App. p. 397, 291 S.W.2d p. 638.

In the cited case, the Trial Judge questioned each juror in substance as follows:

"Your foreman has reported a verdict in favor of the will. Is that or not your verdict?"

The exact verbiage of the interrogation is not preserved in the present record. It would certainly be unusual for this Court to reverse for inadequate verbiage when the exact verbiage is not preserved in the record.

In Lovell v. McCullough, 222 Tenn. 567, 439 S.W.2d 105 (1969), the Supreme Court said:

"[3] In this state polling of juries upon request is mandatory under T.C.A. §§ 20–1324, 20–1325. These statutes require no particular method in the conduct of the poll and under Dixon Stave & Heading Co., Inc. v. Archer, 40 Tenn.App. 327, 291 S.W.2d 603 (1956), such was in the sound discretion of the trial judge. In the *Archer* case the court quoted with approval from 53 Am. Jur., Trial, Sec. 1015:

'Examining the jury by the poll is the most generally recognized means of ascertaining whether they are unanimous in their decision. In no other way can the rights of the parties to the concurrence of the jurors be so effectually secured as to have each juror answer the question, "Is this your verdict?" in the presence of a court and counsel. By this means it can be ascertained for a certainty that no one has been coerced or induced to agree to a verdict to which he does not fully assent. *The poll of each member of the jury on the question whether the verdict rendered is the verdict of each juror represents the extent to which the court may go in inquiring of the jurors as to the method of reaching their verdict.*' 40 Tenn.App. at 336, 291 S.W.2d

at 608. (Emphasis supplied)." 222 Tenn., pp. 575, 576, 439 S.W.2d 108.

It does not appear that the manner of polling the jury was reversible error.

Defendants do not assign as error the refusal of their request for a poll of the jury on remote or proximate negligence. The right to such a response from the jury, formerly prescribed by statute, is now governed by Rule 49 of Tennessee Rules of Procedure. Said rule appears to repose discretion in the Trial Judge as to special findings or verdicts, presumably upon timely application of a party prior to the deliberation of the jury.

The tenth assignment of error is respectfully overruled.

The complaints in regard to the charge and omissions therefrom are not entirely unfounded. Seldom is a charge delivered to a jury which could not be improved. It is better practice for the Trial Judge to reduce his charge to writing before delivery and to carefully compare its verbiage with that of the special requests submitted by counsel so that all proper words, phrases and rules may be included. Nevertheless, perfection is not the criterion for affirmance or reversal; and a charge which states the law with substantial accuracy and fairly submits the issues to the jury should not be grounds for reversal.

As previously intimated, this Court does not necessarily agree with the verdict of the jury. The record contains substantial evidence upon which proximate contributory negligence might have been found. However, this Court cannot say as a matter of law that the undisputed evidence shows the plaintiff to be guilty of proximate contributory negligence as a matter of law. Such a finding by this Court would require reversal and dismissal, which is not justified by the record on appeal.

This record, does not justify a finding of remote contributory negligence as a

matter of law; however, there was substantial evidence upon which the jury might have found remote contributory negligence. Indeed, the verdict of the jury is consistent with such a finding in that the amount of the verdict is considerably less than the amount which might otherwise have been awarded for the injuries sustained. As previously stated, the actual lost earnings, medical expense and property damage exceed $30,000.00. In addition to the allowable compensation for an extended period of pain and suffering, there was the substantial consideration of the permanent disability of a 35-year old truck driver with an earning record of over $9,000.00 per year. According to the medical evidence, the disability of plaintiff's knee would prevent him from driving trucks for an indefinite period, possibly permanently. Slightly more than two years additional loss of earnings would account for the remainder of the $50,000.00 verdict, leaving no compensation for accumulated pain and suffering and continued pain and suffering and partial disability beyond the assumed two years of continued total disability.

Under the foregoing reasoning, an award of more than $50,000.00 might have been justified. Therefore, it may be considered that the jury may well have found remote contributory negligence and reduced the verdict to $50,000.00 from a larger amount which they would have otherwise awarded.

From a consideration of the entire record, this Court is unable to find any valid grounds for disturbing the verdict.

The judgment of the Trial Court is affirmed. Costs of this appeal will be taxed against the defendants and their surety.

Affirmed.

SHRIVER, P. J., and DROWOTA, J., concur.