**Sadie QUEEN, Appellant,**

v.

**D. C. TRANSIT SYSTEM, INC., Appellee.**

**No. 9607.**

District of Columbia Court of Appeals.

Argued April 6, 1976.

Decided Sept. 20, 1976.

Arnold J. Sperling, Washington, D. C., for appellant.

Walter R. Choroszej, Washington, D. C., for appellee.

Before REILLY, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal in an action for personal injuries stemming from a traffic accident. The jury returned a verdict in favor of the defendant, D.C. Transit System, Inc. The principle issue is whether the gratuitous remarks of the jury foreman, made after the rending of the verdict as to Mrs. Queen, created an inconsistency requiring a new trial. We hold that the trial court did not abuse its discretion in denying appellant's motion for a new trial and, therefore, we affirm.

On the afternoon of November 9, 1971, appellant was a passenger in an automobile which was driven Mrs. Sally M. Pettus.[1]

---

1. Mrs. Pettus was a co-plaintiff with appellant in the consolidated trial. The jury found in favor of D.C. Transit and against Mrs. Pettus. She did not appeal the judgment.

The Pettus vehicle and one of appellee's buses collided while both were attempting to negotiate sundry turns near an intersection. Upon submission of the case, the verdict for D.C. Transit was received and counsel for plaintiff Pettus requested that the jury be polled. Each juror stated that the announced verdict was his or her own. The court then "discharged [the jury] from further consideration of this case." Immediately thereafter, the jury foreman requested and was granted permission to speak to the court. The following occurred:

[THE FOREMAN]: ·When we agreed in the jury room, it was agreed that it was negligence on both parties.

After further comment, not relevant for our purposes or clear as to meaning, the trial court inquired:

THE COURT: Now did you want to say something else, sir?

[THE FOREMAN]: Maybe I can clear this up. I made a statement about we found negligence on both parties. Is that—it was also agreed upon by all six of us that there were [sic] no claim—nobody gets anything. What I mean is that even though—

THE COURT: Even though the—D. C. Transit was negligent, the plaintiff Queen had not proved any damages?

[THE FOREMAN]: We feel as though—when we looked at the evidence that we had, that Mrs. Queen was not hurt as much as—as she said she was.

THE COURT: That's what I mean. That she is not entitled to any damages?

[THE FOREMAN]: Yes, sir. I was trying to clear it up.

THE COURT: That's a different matter then. You have made your decision then in accordance with the verdict as you have announced it?

[THE FOREMAN]: Yes, sir. Well, judging from the way the Court read it, I was just—He said for Capital Transit. [(Sic; D.C. Transit was the corporate successor of Capital Transit, since replaced by Washington Metropolitan Area Transit Authority).] He never mentioned the plaintiff . . . and he didn't ask me, you know, was it negligence on both parties. We were only [saving] that Mrs. Pettus was negligent with Capital Transit, also. You follow me?

\* \* \* \* \* \*

[THE FOREMAN]: . . . Well, we just—I just thought I would clear that up. We found there was negligence on both parties.

THE COURT: You found them both negligent, but Mrs. Queen had not proved any damages as a result of it.

\* \* \* \* \* \*

THE COURT: All right. We go right back to where we were ladies and gentlemen. You are discharged from further consideration in this case, and you are now excused . . . .

Appellant subsequently moved for a new trial due to the above colloquy and the motion was denied.

Appellant asserts that she is entitled to a new trial pursuant to Rule 59 of the Superior Court Rules of Civil Procedure.[2] She contends that the conversations between the jury foreman and the trial court judge

2. Super.Ct.Civ.R. 59(a) provides for the following grounds for granting a new trial:
    (a) *Grounds.* A new trial may be granted to . . . any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of ,the United States or of the District of Columbia . . ..

mandate a new trial as the verdicts are inconsistent and indicate "that the jury was either in a state of confusion or abused its power". *Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir. 1970). *See also Wood v. Holiday Inns, Inc.,* 508 F.2d 167, 175 (5th Cir. 1975).

■ The trial court enjoys a broad discretion when granting or denying a motion for a new trial. *See Dietz v. Turner's Arena, Inc.,* D.C.Mun.App., 167 A.2d 797, 799 (1961). *See also* 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2803 (1973). The Supreme Court in *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947), bases such broad discretion on the trial court's unique opportunity "to view the proceedings in a perspective peculiarly available to [the trial judge] alone." As a participant in the trial proceedings, the judge can correct errors and enjoys a "feel of the case which no appellate printed transcript can impart." *Id.* When reviewing the trial court's denial of a motion for a new trial, a reversal is not warranted unless there was an abuse of discretion. *See Quayle v. Crown Company,* D.C.Mun.App., 183 A.2d 758 (1962). *See also Dietz v. Turner's Arena, Inc., supra* at 799; *Grumman Aircraft Eng. Corp. v. Renegotiation Board,* 157 U.S.App.D.C. 121, 132, 482 F.2d 710, 721 (1973), *rev'd on other grounds,* 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975); *Wood v. Holiday Inns, Inc., supra* at 175; 11 C. Wright & A. Miller, Federal Practice and Procedure, *supra* at §§ 2803, 2818.

■ After reviewing the record we are unable to find an abuse of trial court discretion. The jury verdict is not patently inconsistent for, as was subsequently revealed, the jury based its verdict on the question of credibility of testimony as to damages.[3]

■ Moreover, it is well established that a single juror cannot be heard to impeach the verdict of the whole jury. *See McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Smallwood v. Pearl Brewing Company,* 489 F.2d 579, 602 n. 30 (5th Cir. 1974). *See also Dixon Stave & Heading Co. v. Archer,* 40 Tenn. App. 327, 291 S.W.2d 603, 609 (1956). The rule is justified in *Patterson v. Rossignol,* 245 A.2d 852 (Me.1968).

"A different rule, one permitting jurors to impugn the verdicts which they have returned by . . . purporting to explain how and why a juror voted as he did in arriving at his verdict, would inevitably open nearly all verdicts to attack by the losing party and thwart the courts in achieving a long held and cherished ambition, the rendering of final definitive judgments." [*Id.* at 857, quoting *Cox v. Charles Wright Academy, Inc.,* 70 Wash.2d 173, 422 P.2d 515 (1967).]

Bearing this in mind, it would have been better practice for the trial judge to have refused to hear the juror on the matter of the verdict with a brief explanation that it need not be explained and cannot be impeached or undermined by a juror's state-

---

3. Appellant makes an additional contention that the jury verdict is against the weight of the evidence. The authors of 11 C. Wright & A. Miller, Federal Practice and Procedure, *supra,* § 2819 at 123, note that "[i]t is extremely difficult to reconcile appellate review, under any circumstances, of the denial of these new motions with the Seventh Amendment, which prohibits reexamination of any 'fact tried by jury . . . (other) than accord- ing ,to the rules of the common law.'" In spite of this problem, an abuse of discretion standard was articulated in *Taylor v. Washington Terminal Co.,* 133 U.S.App.D.C. 110, 112, 409 F.2d 145, 147 (1969), and is generally accepted as the standard doctrine. *See also* M. Green, Basic Civil Procedure § 8 at 187– 189 (1972). Our review of the record fails to reveal that there was insufficient evidence to support the jury verdict.

ment. *Cf. United States v. Wilson,* 534 F. 2d 375, 379 (D.C.Cir.1976).

Moreover, "there is no rule . . . that requires a jury's actions to be logical." *York Chrysler-Plymouth, Inc. v. Chrysler Credit Corp.,* 447 F.2d 786, 794 (5th Cir. 1971). The fact that a jury reached its decision by virtue of "erroneous reasoning" is not a basis for reversing a judgment. *See Dixon Stave & Heading Co. v. Archer, supra,* 291 S.W.2d at 610. *See also Velsor v. Allstate Insurance Co.,* 329 So.2d 391, 392–93 (Fla. App.1976); *cf. Patterson v. Rossignol, supra* at 856. In any event, the foreman's comments indicate that there was a rational basis and logical explanation for the jury's actions. *See United States v. Simmons,* 346 F.2d 213, 218 (5th Cir. 1965); *Turner v. "The Cabins", Tanker, Inc.,* 327 F.Supp. 515, 519 (D.Del.1971).

It is also possible to view the foreman's remarks as mere surplusage and totally irrelevant to the verdict and judgment. Prior to the foreman's statements, the verdict had been rendered, the jury had been polled, and the court had discharged the jury from further consideration of the case. The court in *Leonard's of Plainfield v. Dybas,* 130 N.J.L. 135, 31 A.2d 496, 497 (Sup.Ct.1943), held that a trial is concluded when "a verdict has been rendered and the jury discharged." The proper course for the trial court, according to *Velsor v. Allstate Insurance Co., supra* at 393, "was merely to poll the jury as requested by plaintiffs. If each juror indicated his assent to the verdicts ultimately arrived at, and affirmed that they were his verdicts, the court ought not have gone any further."

The order of the trial court is

*Affirmed.*